Ohio CONSUMERS' COUNSEL, APPELLANT, *v.* PUBLIC UTILITIES COMMISSION

OF OHIO ET AL., APPELLEES.

[Cite as *Ohio Consumers' Counsel v. Pub. Util. Comm.*,

127 Ohio St.3d 524, 2010-Ohio-6239.]

*Public utilities — Natural-gas rates — Straight Fixed Variable rate design —*
*Public notice of proposed change in rates — Waiver of objections to*
*notice.*

(No. 2009-1547 — Submitted October 13, 2010 — Decided December 23, 2010.)

APPEAL from the Public Utilities Commission of Ohio,

Nos. 07-1080-GA-AIR and 07-1081-GA-ALT.

_____

**CUPP, J.**

**{¶ 1}** This case marks the third time that we have been called upon to consider challenges to orders of the Public Utilities Commission of Ohio ("commission" or "PUCO") that adopted a Straight Fixed Variable ("SFV") rate design. We previously upheld the PUCO's approval of a modified SFV rate design for Duke Energy Ohio and Dominion East Ohio. *Ohio Consumers' Counsel v. Pub. Util. Comm.*, 125 Ohio St.3d 57, 2010-Ohio-134, 926 N.E.2d 261. In those cases, we held that the commission's decisions to allow Duke and Dominion to abandon the traditional natural-gas rate design used over the past 30 years in favor of a modified SFV rate structure were not unlawful or unreasonable. Under traditional natural-gas rate design, a small portion of the utility's fixed delivery costs is recovered through a low fixed monthly customer charge with the remaining fixed distribution costs recovered through a rate that varies with gas usage. The SFV rate design separates or "decouples" the utility's recovery of its costs of delivering gas (which are predominantly fixed) from the

amount of gas that customers actually use (which varies from month to month). Under the modified SFV rate structure approved in the Duke and Dominion cases, most fixed costs of delivering gas are collected through a higher flat customer charge, with the remaining fixed costs recovered through a correspondingly lower variable gas-usage component.

{¶ 2}   In this case, Ohio Consumers' Counsel ("OCC") challenges the PUCO's approval of an SFV rate design as the method by which Vectren Energy Delivery of Ohio, Inc., would collect its authorized revenues from the residential customer class.  For the reasons that follow, we affirm the orders of the PUCO that approved the SFV rate design for Vectren as being within the lawful and reasonable discretion of the PUCO.

## I.  Facts and Procedural Background

{¶ 3}   On November 20, 2007, Vectren filed an application to increase its natural gas distribution rates.  Case No. 07-1080-GA-AIR.[1]  Several parties, including OCC, intervened in Vectren's rate case. On September 8, 2008, the parties filed a joint stipulation and recommendation, resolving all issues except for the adoption of a new rate design.

{¶ 4}   As to the matter of the rate design, Vectren's application proposed a gradual transition to a true SFV rate design that would take place over a period of two rate-case cycles.  Under a true SFV design, all fixed distribution costs are recovered through a flat customer charge and there is no usage or volumetric component of the distribution charge.  The rate case under review here – the first rate case of the proposed two-rate-case cycle – involved a two-stage approach. Under the first stage, Vectren proposed an increase in the flat customer charge and a corresponding reduction in the volumetric (or usage) charge.  Under the

---

1. Vectren also filed applications seeking approval of an alternative rate plan (case No. 07-1081-GA-ALT) and authority to continue certain accounting methods (case No. 08-632-GA-AAM).

second stage, Vectren proposed a further increase in the flat customer charge and a further decrease in the usage charge.

{¶ 5} As it did in the Duke and Dominion cases, OCC opposed the SFV rate design. OCC argued in favor of keeping the traditional rate design (low flat customer charge and higher usage component) and adding a sales-decoupling mechanism, which would allow Vectren to recover revenues lost as a result of decreases in customer usage.

{¶ 6} On January 7, 2009, the PUCO issued its order adopting the stipulation. The PUCO's order also approved the SFV rate design for the collection of natural-gas distribution rates instead of the decoupling mechanism advocated by OCC.

{¶ 7} The PUCO, however, rejected the amount of the flat customer charge that Vectren had proposed in its application. For the first year of the rate plan, Vectren's application proposed that the flat customer charge be set at $10 per month during the summer months and at $16.75 during the winter months. The commission did not believe that a seasonal approach was appropriate and therefore decided to set the customer charge at $13.37 per month for the first year of the rate plan. The $13.37 customer charge included a volumetric rate component.

{¶ 8} The commission also rejected Vectren's proposed gradual transition to SFV. Instead, the commission decided that at the end of the first year (Stage One) of the rate plan, Vectren's customer charge would be set at $18.37 per month with no volumetric rate. That is, rather than ordering transition to a true SFV rate design over two rate cases as proposed in Vectren's application, the commission ordered that the transition to a full SFV rate structure be implemented immediately upon expiration of Stage One of the current rate case.

{¶ 9} OCC filed a timely application for rehearing. The commission granted rehearing on March 4, 2009, for the purpose of further considering the

matters raised by OCC's application. On August 26, 2009, after further review, the commission rejected OCC's application for rehearing in its entirety.

{¶ 10} OCC's appeal of the commission's orders is now before us for final decision.

## II. Standard of Review

{¶ 11} "R.C. 4903.13 provides that a PUCO order shall be reversed, vacated, or modified by this court only when, upon consideration of the record, the court finds the order to be unlawful or unreasonable." *Constellation NewEnergy, Inc. v. Pub. Util. Comm.*, 104 Ohio St.3d 530, 2004-Ohio-6767, 820 N.E.2d 885, ¶ 50. We will not reverse or modify a PUCO decision as to questions of fact if the record contains sufficient probative evidence to show that the commission's decision was not manifestly against the weight of the evidence and was not so clearly unsupported by the record as to show misapprehension, mistake, or willful disregard of duty. *Monongahela Power Co. v. Pub. Util. Comm.*, 104 Ohio St.3d 571, 2004-Ohio-6896, 820 N.E.2d 921, ¶ 29. The appellant bears the burden of demonstrating that the PUCO's decision is against the manifest weight of the evidence or is clearly unsupported by the record. Id.

{¶ 12} Although this court has "complete and independent power of review as to all questions of law" in appeals from the PUCO, *Ohio Edison Co. v. Pub. Util. Comm.* (1997), 78 Ohio St.3d 466, 469, 678 N.E.2d 922, we have explained that we may rely on the expertise of a state agency in interpreting a law where "highly specialized issues" are involved and "where agency expertise would, therefore, be of assistance in discerning the presumed intent of our General Assembly." *Consumers' Counsel v. Pub. Util. Comm.* (1979), 58 Ohio St.2d 108, 110, 12 O.O.3d 115, 388 N.E.2d 1370.

{¶ 13} Moreover, we have long recognized limitations upon our review of commission orders that establish rates and rate-related classifications. *Green Cove Resort I Owners' Assn. v. Pub. Util. Comm.*, 103 Ohio St.3d 125, 2004-

Ohio-4774, 814 N.E.2d 829, ¶ 24. "Our function is not to weigh the evidence or to choose between alternative, fairly debatable rate structures. That would be to interfere with the jurisdiction and competence of the commission and to assume powers which this court is not suited to exercise." *Cleveland Elec. Illum. Co. v. Pub. Util. Comm.* (1976), 46 Ohio St.2d 105, 108, 75 O.O.2d 172, 346 N.E.2d 778. This court's task is not to set rates; rather, it is only to ensure that the rates are not unlawful or unreasonable and that the rate-making process itself is lawfully carried out. *AT&T Communications of Ohio, Inc. v. Pub. Util. Comm.* (1990), 51 Ohio St.3d 150, 154, 555 N.E.2d 288.

### III. Analysis

#### A. Statutory Notice Requirements

{¶ 14} In its first proposition of law, OCC contends that the commission failed to enforce the public-notice requirements in R.C. 4909.18 and 4909.19 when it approved Vectren's rate-increase application. According to OCC, Vectren's public notice of its rate application failed to convey the substance and prayer of the SFV rate design and the Stage Two rates.

{¶ 15} We overrule OCC's first proposition of law for the reasons that follow.

1. OCC did not give the commission an opportunity to correct

the alleged error

{¶ 16} Vectren filed its rate-increase application on November 20, 2007. Along with its application, Vectren submitted a proposed newspaper publication notice for the PUCO's approval. In an entry dated January 16, 2008, the commission found that Vectren's proposed public notice complied with R.C. 4909.18(E) and 4909.19. Three days later, Vectren began publishing notices in newspapers throughout Vectren's service territory.

{¶ 17} OCC filed a motion to intervene in Vectren's rate case on November 5, 2007, which was 15 days before Vectren filed its rate-increase

application.[2]   OCC did not, however, raise an objection when Vectren first submitted the proposed public notice with its rate-increase application.  OCC also did not request that the commission reconsider its January 16, 2008 entry approving the proposed notice for publication.  Instead, OCC first challenged Vectren's public notice when OCC filed objections to the PUCO's Staff Report on July 16, 2008.  This occurred nearly eight months after Vectren first submitted its proposed public notice to the PUCO for approval, six months after the PUCO approved the proposed notice, and over five months after the notices had been published.

{¶ 18} We hold that OCC's failure to challenge Vectren's public notice at an earlier juncture constitutes a forfeiture of the objection because it deprived the commission of an opportunity to cure any error when it reasonably could have. See, e.g., *Parma v. Pub. Util. Comm.* (1999), 86 Ohio St.3d 144, 148, 712 N.E.2d 724 ("By failing to raise an objection until the filing of an application for rehearing, Parma deprived the commission of an opportunity to redress any injury or prejudice that may have occurred").  OCC should have challenged Vectren's public notice before it was published in local newspapers, and its decision to wait five months after publication before raising an objection is fatal to OCC's claim.

2. OCC's counterargument: subject-matter jurisdiction cannot be waived

{¶ 19} OCC counters that it could not waive this error before the commission, because this court has determined that the notice provisions of R.C. 4909.18 and 4909.19 are jurisdictional.  According to OCC, utilities must comply with the statutory notice requirements in order for the PUCO to obtain subject-matter jurisdiction over the utility's rate application.  OCC thus contends that no waiver occurred at the commission because subject-matter jurisdiction cannot be waived.

_____

2. Although OCC's motion to intervene was not granted until August 1, 2008, OCC was able to participate fully in all proceedings before being granted intervening-party status.

{¶ 20} Vectren and the PUCO respond that this court lacks jurisdiction to consider OCC's claim of lack of subject-matter jurisdiction in the commission because OCC did not specifically set forth this claim in its application for rehearing to the commission or in its notice of appeal to this court. See R.C. 4903.10 ("No party shall in any court urge or rely on any ground for reversal, vacation, or modification not so set forth in the application" for rehearing filed with the PUCO) and 4903.13 (requiring a party challenging a PUCO order to set forth the errors complained of in the notice of appeal to this court).

{¶ 21} We need not consider whether OCC specified this claim on rehearing, because we find that OCC did not mention its claim of lack of subject-matter jurisdiction in its notice of appeal to this court. OCC's notice of appeal states only that "[t]he PUCO erred in unlawfully approving the utility's proposed straight fixed variable rate design when the utility failed to provide adequate legal notice of the rate design pursuant to R.C. 4909.18 and 4909.19." The more general phrase "unlawfully approving" does not equate to the more specific claim of lack of subject-matter jurisdiction and therefore does not state a claim of lack of subject-matter jurisdiction in the notice of appeal. Moreover, OCC does not respond to Vectren's or the PUCO's argument that OCC has failed to invoke this court's jurisdiction over the claim of lack of subject-matter jurisdiction. That is, OCC failed to argue that it was not *required* to raise the claim in its notice of appeal. Accordingly, we lack jurisdiction to consider OCC's claim that the notice requirement implicates subject-matter jurisdiction and therefore could not be waived at the PUCO. See *Ohio Partners for Affordable Energy v. Pub. Util. Comm.*, 115 Ohio St.3d 208, 2007-Ohio-4790, 874 N.E.2d 764, ¶ 16.

### B. Due Process

{¶ 22} OCC asserts in its second proposition of law that the failure to provide proper notice violated customers' due process rights. According to OCC, R.C. 4905.70 and 4929.02(A)(4) create protected property interests in customers.

OCC argues that the PUCO terminated or diminished those interests in this case without affording customers notice and an opportunity to be heard.

{¶ 23} We hold that OCC's due process claim is unavailing because OCC did not raise its argument on protected property interests in its application for rehearing. See R.C. 4903.10. OCC also failed to set forth this specific claim in its notice of appeal to this court. R.C. 4903.13. These failures preclude our review of this issue. *Ohio Consumers' Counsel v. Pub. Util. Comm.*, 114 Ohio St.3d 340, 2007-Ohio-4276, 872 N.E.2d 269, ¶ 40. See also *Reading v. Pub. Util. Comm.*, 109 Ohio St.3d 193, 2006-Ohio-2181, 846 N.E.2d 840, ¶ 16 (as-applied constitutional challenge must be raised in first instance before the PUCO).

*C. Compliance with Regulatory Practices and Commission Precedent*

{¶ 24} OCC asserts in its third proposition of law that the commission violated its own precedents and failed to adhere to the regulatory principle of gradualism when it imposed the SFV rate design on Vectren's residential customers. According to OCC, the commission failed to demonstrate a clear need to abandon the traditional natural-gas rate design used over the past 30 years and failed to show why prior rate-design precedent was not applicable to Vectren's case. OCC contends that the commission's failure to demonstrate a clear need for change resulted in rates that were unjust and unreasonable.

{¶ 25} The arguments that OCC asserts in its third proposition of law are identical to arguments that we rejected in the Duke and Dominion cases. *Ohio Consumers' Counsel v. Pub. Util. Comm.*, 125 Ohio St.3d 57, 2010-Ohio-134, 926 N.E.2d 261, ¶ 13-14. Because the PUCO gave the same rationale for adopting SFV in Vectren's case, our earlier decision is dispositive of this proposition of law. See id. at ¶ 15-18 (finding that the commission's policy decision to adopt SFV was clearly stated and reasonable) and at ¶ 19-20 (holding that the PUCO is not required to apply gradualism in rate-design cases).

*D. Energy Efficiency and Conservation*

{¶ 26} Under its fourth proposition of law, OCC maintains that the commission-approved SFV rate design fails to promote energy efficiency and discourages conservation in violation of R.C. 4929.02(A)(4) and 4905.70.

{¶ 27} OCC failed to set forth this proposition of law in its notice of appeal. We therefore lack jurisdiction to consider the arguments raised here. *Ohio Partners for Affordable Energy*, 115 Ohio St.3d 208, 2007-Ohio-4790, 874 N.E.2d 764, ¶ 16.

*E. Manifest Weight of the Evidence*

{¶ 28} OCC asserts in its fifth proposition of law that the commission's approval of the SFV rate design is against the manifest weight of the evidence. We will address each of OCC's claims in turn.

1. Impact on low-income customers

{¶ 29} OCC first claims that the commission erred when it approved the SFV rate design by relying in part on the unsubstantiated theory that low-income customers benefited from SFV.

{¶ 30} Contrary to OCC's assertion, the commission did not find that all of Vectren's low-income customers would benefit under the SFV rate design. What the commission found was that low-income customers are on average high-use customers. And because high-use customers benefit from the SFV rate design, the commission concluded that "low-income customers, on average, would actually enjoy lower bills under the [SFV] rate design."

{¶ 31} Evidence before the commission supported this finding. Staff witness Stephen Puican testified that "low-income customers are, on average, not low usage customers. Because high-usage customers will benefit from the SFV rate design, and low-income customers are more likely to be high-usage customers, it is reasonable to conclude that low-income customers are actually more likely to benefit from SFV." Vectren witness H. Edwin Overcast corroborated Puican's testimony. Overcast testified that "[b]ased on the analysis

of actual billing information for VEDO's [Vectren's] residential customer and available Census block group income data for VEDO's service area, * * * low income customers in VEDO's service area consume on average more natural gas annually than all but the highest income residential customers in VEDO's service area." He further testified that low-income customers would benefit by having lower winter gas bills under SFV.

{¶ 32} OCC faults the PUCO for relying on Puican's testimony while summarily dismissing the testimony of OCC's expert witness Roger Colton. In essence, OCC is asking this court to reweigh the evidence and assign greater weight to Colton's testimony than the commission did. But that is not our prerogative in PUCO appeals. See *Util. Serv. Partners, Inc. v. Pub. Util. Comm.*, 124 Ohio St.3d 284, 2009-Ohio-6764, 921 N.E.2d 1038, ¶ 35.

### 2. Impact on low-use customers

{¶ 33} OCC contends that the PUCO offered no record citation to support its conclusion that low-usage customers had not been paying the entirety of their fixed costs under the previous rate design. Likewise, OCC maintains that there is no record support for the PUCO's "allegation" that high-use customers were overpaying fixed costs under the previous rate design.

{¶ 34} OCC is mistaken that there was no record support for the conclusion that low-use customers were subsidized under the prior rate structure – several witnesses testified to this end. Moreover, we have accepted the commission's finding that the SFV rate design was intended to remedy inequities in the prior rate structure caused by high-use customers overpaying their own fixed costs and subsidizing low-use customers. See *Ohio Consumers' Counsel v. Pub. Util. Comm.*, 125 Ohio St.3d 57, 2010-Ohio-134, 926 N.E.2d 261, ¶ 30, 33, 46.

### 3. Impact on low-income, low-use customers

**{¶ 35}** OCC also contends that the commission-approved SFV design is bad public policy for Vectren's low-use, low-income residential customers. According to OCC, the one known effect of the SFV rate design is that some of Vectren's low-income and low-use customers will now be forced to subsidize high-use residential customers.

**{¶ 36}** OCC's assertions of unfair cost subsidization are unfounded. In order to remedy inequities in the prior rate plan, some low-use residential customers – including some who are low-income – will pay more under the new rate design. But low-income and low-use customers will pay more because they will no longer be subsidized by higher-use customers. See *Ohio Consumers' Counsel v. Pub. Util. Comm.*, 125 Ohio St.3d 57, 2010-Ohio-134, 926 N.E.2d 261, ¶ 30, 33, 46. It does not automatically follow that low-income and low-use customers will now be subsidizing high-use customers under SFV. And OCC has offered no compelling evidence to the contrary.

**{¶ 37}** As to OCC's claim that the PUCO failed to justify terminating Vectren's pilot program for low-income customers after one year, OCC misconstrues the commission's order. The commission did order that the program be made available for one year. But the commission also stated that at the end of the first year, it would "evaluate the program for its effectiveness in addressing our concerns relative to the impact on low-usage, low-income customers." Thus, OCC's challenge to the pilot program is speculative and does not demonstrate that the commission's approval of SFV was against the manifest weight of the evidence.

### 4. Prospective studies/rush to judgment

**{¶ 38}** Finally, OCC claims that the PUCO's decision to impose the SFV rate design was in sharp contrast to other policy changes of the commission that employed more open, deliberate processes and included participation by all stakeholders. OCC argues that the failure to devote the necessary time to study

the impact of SFV demonstrates that the commission's decision is against the manifest weight of the evidence.

{¶ 39} OCC made a similar "prospective studies" argument in the Dominion case, which we rejected. *Ohio Consumers' Counsel v. Pub. Util. Comm.*, 125 Ohio St.3d 57, 2010-Ohio-134, 926 N.E.2d 261, ¶ 53-57. This claim is not well taken for the same reasons. Moreover, the voluminous record in this case contradicts OCC's claim that there was a rush to judgment. Likewise, OCC fully and extensively participated in all proceedings before the commission in Vectren's rate-design case, and we find no evidence that it or any other stakeholder was excluded.

### IV. Conclusion

{¶ 40} In this appeal, OCC challenges how the PUCO designed the rates for gas-distribution service for Vectren's residential customers. OCC asks that we intervene in an area – rate design – that is traditionally within the PUCO's expertise. But OCC has not sustained its burden of showing that the commission's order in this case is unlawful or unreasonable or that the rate-making process itself was unlawfully carried out. *AT&T Communications of Ohio, Inc. v. Pub. Util. Comm.*, 51 Ohio St.3d at 154, 555 N.E.2d 288.

Orders affirmed.

PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, and LANZINGER, JJ., concur.

BROWN, C.J., dissents.

––––––––––––––––––

**PFEIFER, J., concurring.**

{¶ 41} I concur in the majority decision. Again, the Ohio Consumers' Counsel ("OCC") has unsuccessfully challenged PUCO's approval of a Straight Fixed Variable rate design. The OCC's office continues to tilt at windmills, when

it could instead be engaging in a practical way to help Ohioans contain their energy costs.

{¶ 42} The OCC could provide great service to Ohio consumers by working with the General Assembly and utilities to create incentives for utilities to enter into long-term contracts with natural-gas providers to take advantage of the current low price of natural gas. As it stands, utilities simply pass on to consumers the price of natural gas, whatever it is. Utilities are not given a real incentive to seek out a long-term, low price. In the end, it is a stable, low natural-gas price that is going to help consumers. Now is the time, while natural gas prices are at or near historical lows, for the OCC and General Assembly to do useful work for Ohio's natural-gas consumers.

_____

**BROWN, C.J., dissenting.**

{¶ 43} I agree with the view expressed by Justice Pfeifer about the important service that the OCC might provide for Ohio consumers, but I do not believe that the PUCO's orders should be affirmed.

{¶ 44} n my view, the notice published by Vectren did not comply with R.C. 4909.19. That statute requires that a utility seeking a rate increase publish in Ohio newspapers a notice that conveys "the substance and prayer" of its proposal. Similarly, the Vectren notice did not comply with R.C. 4909.18(E), because it failed to "fully disclos[e] the substance of the application" and "include the average percentage increase in rate that a representative industrial, commercial, and residential customer will bear should the increase be granted in full." I would therefore vacate the PUCO's order approving a change of Vectren's rate design to a two-stage modified straight fixed variable rate structure.

{¶ 45} R.C. 4909.18(E) requires a utility seeking a rate increase to first submit to the commission a proposed notice to be published in newspapers in the communities the utility serves. The statute requires the utility to *fully disclose the*

*substance* of the application. R.C. 4909.18(E) further requires that the notice "prominently state that any person * * * may file * * * an objection to such increase * * *. The notice shall further *include the average percentage increase* in rate that a representative industrial, commercial, and residential customer will bear should the increase be granted in full." (Emphasis added.)

{¶ 46} Vectren's application proposed a two-stage transition from the traditional natural-gas rate design under which it had previously been operating to a straight fixed variable design. In the traditional design, a relatively small portion of the utility's fixed delivery costs are recovered through a low fixed monthly customer charge with the remaining fixed distribution costs recovered through a rate that varies with gas usage. In a straight fixed variable ("SFV") design, a utility recovers its costs of delivering gas (which are predominately fixed) separately from the amount of gas that customers actually use (which varies from month to month). The expected result of the Vectren proposal to transition to an SFV design was that most fixed costs of delivering gas would be collected through a higher flat customer charge, with the remaining fixed costs recovered through a correspondingly lower component.

{¶ 47} Vectren undoubtedly was aware at the time it filed its rate increase application that, as the PUCO ultimately acknowledged, under an SFV rate design, "there will be some customers who will be better off and some customers who will be worse off * * *. The levelized rate design will impact low-usage customers more * * *, since they have not been paying the entirety of their fixed costs under the existing rate design. High-use customers, who have been paying more than their share of the fixed costs, will actually experience a rate reduction * * *." Yet nothing in the Vectren notice advised its customers that these consequences would result if the PUCO approved the change to an SFV design that Vectren proposed.

{¶ 48} Vectren provided to the PUCO a proposed R.C. 4909.19 notice when it submitted its application for a rate-design change to an SFV design. The PUCO approved the notice for publication, and it was published. However, in the entire published notice filling a full newspaper page with fine print, there is only one fleeting reference relative to two significant aspects of Vectren's application: (1) that the proposal included a major change in the fundamental method by which the way gas rates were calculated and (2) that the rate increases would be implemented in stages with the amount of increase varying with consumption. As to these two consequences, the notice contained only this text: "In the Application, VEDO [Vectren Energy Delivery of Ohio, Inc.] proposes changes to its rate schedules to reflect increases to the cost of service. Additionally, VEDO proposes changes to the rate design for Rate 310 (Residential Sales Service) and Rate 315 (Residential Transportation Service) that initiate a gradual transition to a straight fixed variable rate for distribution service."

{¶ 49} In my view, this notice is deficient because it fails to advise the public that Vectren sought a major change in the way customers are charged for natural gas and failed to notify the public that its proposed "gradual transition" to the new design proposed a two-stage implementation with the first rate increase to take effect on the effective date of the PUCO order approving rates. A second and distinct rate increase would be instituted on November 1, 2010. Upon implementation, each of the two stages would produce different consequences for different categories of consumers.

{¶ 50} Similarly, the notice failed to advise Vectren's customers of the "average percentage increase in rate that a representative industrial, commercial, and residential customer will bear *should [Vectren's] increase be granted in full."* (Emphasis added.) R.C. 4909.18(E). This is so because the rate-increase application contemplated a second rate increase after implementation of the first stage of implementation of the SFV design. Yet the notice advised only of the

percentage increase that would occur if PUCO approved the first-stage increase described in the rate-increase proposal. The notice failed entirely to advise of the percentage increase that would be produced upon implementation of the second stage. Because R.C. 4909.18(E) requires notification of the rate increases that would result should the proposed increase be "granted in full," the notice fails to comply with the statute as a matter of law.

{¶ 51} In 1977 this court discussed the notice requirement of R.C. 4909.19 as follows:

{¶ 52} "While generally the published notice required under R.C. 4909.19 need not contain every specific detail affecting rates contained in the application (indeed, such a requirement would be highly impractical and unnecessarily expensive), the court notes that the statute does require that the 'substance' of the application be disclosed; *i. e.*, that the *essential nature or quality of the proposal be disclosed* to those affected by the rate increases. Although there is no specific test or formula this court can apply in reviewing challenges made by subscribers with respect to the sufficiency of the notice provided by a utility, *it is clear, given the purposes of the publication requirement under R.C. 4909.19, that a highly innovative and material change in the method of charging customers should be included in the notice.*" (Emphasis added.) *Committee Against MRT v. Public Util. Comm.* (1977), 52 Ohio St.2d 231, 233, 6 O.O.3d 475, 371 N.E.2d 547.

{¶ 53} In my view, the change to an SFV design proposed by Vectren constituted a "highly innovative and material change in the method of charging customers" that Vectren was required to explain in its R.C. 4909.19 notice. In notifying its customers that Vectren "proposes changes to the rate design * * * that initiate a gradual transition to a straight fixed variable rate for distribution service," Vectren failed to disclose the essential nature or quality of their proposal. I believe that R.C. 4909.18 and 4909.19 contemplate that a consumer be provided meaningful notice—not a cryptic single sentence containing a

significant proposed change camouflaged by industry jargon and placed within a full newspaper page of fine print.

{¶ 54} I do not believe that it would have been unduly burdensome to provide Vectren's consumers with basic information as to both the nature of an SFV rate design and the potential consequences to them of its adoption. In Texas, a gas utility proposed a significant change in its rate schedule and published a notice that included the following information:

{¶ 55} "• 'The proposed change will have differing impacts on individual customers, depending on consumption and current applicable rate schedules.'

{¶ 56} "• A residential customer receiving a bill for 6 Mcf would incur 'an average increase of approximately $3.59 per month a 9.4% increase'; a commercial customer receiving a bill for 30 Mcf would incur 'an average increase of approximately $13.91 per month or an 8.7% increase'; while '[t]he effect of the proposed changes to rates and services for individual customers, which may be significant for individual customers, will vary depending on type of service and consumption.' " *Dallas v. RR. Comm. of Texas* (Tex.App.2008), 2008 WL 4823225, Util. L.Rep. 27,027.

{¶ 57} In my view, the PUCO should have required that basic information of a similar nature be included by Vectren in its published notice.

{¶ 58} Nor do I agree with the majority that the deficiencies of Vectren's published notice may properly be deemed waived based on the failure of the OCC to complain of the inadequacies of the Vectren notice at an earlier time. First, it is well established that jurisdictional deficiencies in administrative proceedings cannot be waived. *Time Warner AxS v. Publ. Util. Comm.* (1996), 75 Ohio St.3d 229, 661 N.E.2d 1097. And this court has long held that compliance with the notice requirement of R.C. 4909.19 gives interested parties the constructive notice of an application necessary to confer jurisdiction on the commission. *Duff v. Pub. Util. Comm.* (1978), 56 Ohio St.2d 367, 376, 10 O.O.3d 493, 384 N.E.2d 264.

Second, R.C. 4909.18(E) requires that the published notice prominently state that "any person, firm, corporation, or association" may file objections to a proposed rate increase. It is impossible to determine what parties, if any, might have appeared and participated in the PUCO proceedings had meaningful and understandable notice been published. The OCC should have voiced its objections to the sufficiency of the newspaper notice in a more timely manner. However, its failure to have done so cannot be held against unknown persons, firms, corporations, or associations that potentially would have participated in the PUCO proceedings had Vectren complied with the notice statutes.

{¶ 59} Accordingly, I respectfully dissent.

_____

Janine L. Migden-Ostrander, Ohio Consumers' Counsel, and Maureen R. Grady, Joseph P. Serio, and Michael E. Idzkowski, Assistant Consumers' Counsel, for appellant..

Richard Cordray, Attorney General, William L. Wright, Section Chief, and Werner L. Margard III, Assistant Attorney General, for appellee Public Utilities Commission of Ohio.

McNees, Wallace & Nurick, L.L.C., Samuel C. Randazzo, Gretchen J. Hummel, and Lisa G. McAlister, for intervening appellee, Vectren Energy Delivery of Ohio, Inc.

_____