[Cite as *In re Application of Columbus S. Power Co.,* 129 Ohio St.3d 271, 2011-Ohio-2638.]

IN RE APPLICATION OF COLUMBUS SOUTHERN POWER COMPANY ET AL. TO
MODIFY STANDARD SERVICE OFFER RATES; INDUSTRIAL ENERGY USERS-
OHIO, APPELLANT; PUBLIC UTILITIES COMMISSION ET AL., APPELLEES.
IN RE FUEL ADJUSTMENT CLAUSES FOR COLUMBUS SOUTHERN POWER
COMPANY ET AL.; INDUSTRIAL ENERGY USERS-OHIO, APPELLANT; PUBLIC
UTILITIES COMMISSION ET AL., APPELLEES.
[Cite as *In re Application of Columbus S. Power Co.,* 129 Ohio St.3d 271,
2011-Ohio-2638.]

*Public Utilities Commission — "Reasonable arrangements" — Appellant has
shown prejudice but not legal error — Order affirmed.*

(Nos. 2010-0729 and 2010-0730 — Submitted April 19, 2011 — Decided
June 7, 2011.)

APPEAL from the Public Utilities Commission, Nos. 09-1906-EL-ATA,
09-872-EL-FAC, and 09-873-EL-FAC.

_____

O'CONNOR, C.J.

{¶ 1} In the proceedings below, the Public Utilities Commission
("PUCO" or "commission") allowed the American Electric Power operating
companies Columbus Southern Power Company and the Ohio Power Company
(collectively, "AEP") to adjust their economic-development cost-recovery riders.
Industrial Energy Users-Ohio ("IEU") appeals the decision. Finding none of
IEU's arguments to have merit, we affirm.

## I. Background

{¶ 2} In recent years, the commission has approved several "reasonable
arrangements" between AEP and a southeastern Ohio manufacturing company,
Ormet Primary Aluminum Corporation. "[R]easonable arrangements" are

permitted under R.C. 4905.31 if filed with and approved by the commission. R.C. 4905.31(E). In this case, the term refers to individually tailored, discounted rate schedules. An earlier arrangement involving AEP and Ormet ended on December 31, 2008. A later arrangement began in 2009.[1] Filling the gap between these two is the arrangement at issue in this case—we will call it the "interim arrangement."

**{¶ 3}** Under all three arrangements, Ormet received discounted rates. Discounted rates lead to what is known as "delta revenue"—the difference between what AEP would have collected from Ormet under its tariffs and what it actually collected, given the discount. Ohio Adm.Code 4901:1-38-01(C). When the commission approved the interim arrangement, it noted that AEP would keep track of its delta revenues, but the commission did not approve their recovery.

**{¶ 4}** AEP sought recovery of the interim delta revenues in the proceedings below. IEU intervened and opposed AEP's request, but the commission approved it on January 7, 2010. IEU sought rehearing, which the commission denied.

**{¶ 5}** IEU appealed the order under two case numbers and filed a motion to consolidate the two appeals, which we granted. AEP intervened in both cases on the side of the commission.

## II. Discussion

**{¶ 6}** IEU raises three propositions of law. None have merit.

*A. IEU's First Two Propositions of Law Have Been*

*Resolved by a Prior Decision*

**{¶ 7}** IEU's first two propositions of law are identical to those that IEU raised in case No. 2009-2022, *In re Application of Columbus S. Power Co.*, 128 Ohio St.3d 512, 2011-Ohio-1788, 947 N.E.2d 655. After submitting this case on the briefs, IEU filed a motion to dismiss its first two propositions of law because

---

1. This arrangement is addressed in *In re Application of Ormet Primary Aluminum Corp.,* 129 Ohio St.3d 9, 2011-Ohio-2377, 949 N.E.2d 991.

we rejected those propositions in the earlier case. See id. at ¶ 36–49. We grant IEU's motion and dismiss the first two propositions of law.

### B. Although IEU Has Been Prejudiced by the Order, It Has Not Demonstrated Reversible Error

{¶ 8} In its third proposition of law, IEU argues that the commission erred by allowing AEP to collect delta revenues arising from an interim arrangement with Ormet. IEU asserts that the commission approved the rate increase "without any process or review of the lawfulness or reasonableness of the interim Ormet reasonable arrangement deferrals." Neither the commission nor AEP disputes IEU's assertion that the commission has not reviewed the reasonableness of the challenged rate increase. Indeed, they make no argument on the merits, instead arguing solely that IEU has not been prejudiced.

{¶ 9} Before reviewing the merits of IEU's claim, we consider whether IEU has been prejudiced.

### 1. The Order Prejudiced IEU

{¶ 10} According to the appellees, even if the commission had approved unreasonable rates, "future rates will be adjusted to make [the affected] customers whole." IEU responds that the appellees "ignore the immediate harm and prejudice experienced by [certain] customers by paying these higher rates," as well as the fact that there would be a delay in review, "possibly for years after the rates were paid."

{¶ 11} IEU has the better end of the prejudice dispute. The commission acknowledges that because of the order, some "customers do pay slightly more today than they would have." Thus, it is uncontested that some of IEU's members are presently paying higher rates as a result of the order. That harm is immediate and concrete, and the direct, financial injury could well cause further consequential harm. For example, less money now means lost opportunities to use that money later, and these lost investment opportunities could result in

further financial loss. Reduced cash flows could also have indirect business consequences—such as requiring additional borrowing, payroll reductions, or other unwanted actions. Thus, to cure all prejudice if present rates are eventually judged too high, the commission must not only restore lost dollars to customers, but also provide appropriate compensation for any consequential harms. All this assumes that the customers, who have already paid the increased rate, remain on the system to enjoy any curative credits.

{¶ 12} IEU has demonstrated prejudice, as it must, *Indus. Energy Consumers v. Pub. Util. Comm.* (1992), 63 Ohio St.3d 551, 553, 589 N.E.2d 1289, while the claims of no prejudice depend on numerous contingencies. Though it is possible that all present harms will eventually be cured, the harm is present and concrete, and the alleged cure is speculative. Therefore, we will not dispose of this case for lack of prejudice.

2. On the Merits, IEU Has Not Demonstrated that the Order Was Unreasonable

{¶ 13} Nevertheless, although IEU has shown prejudice, it has not demonstrated reversible error.

{¶ 14} The critical problem is that IEU simply has not presented a reasoned theory of legal error. It does not even *cite* a single legal authority in this section of its brief, much less present an argument that a legal authority applies on these facts and was violated. This alone is grounds to reject its claim. See, e.g., *Util. Serv. Partners, Inc. v. Pub. Util. Comm.*, 124 Ohio St.3d 284, 2009-Ohio-6764, 921 N.E.2d 1038, ¶ 53 (rejecting proposition when "[n]o argument is supplied regarding whether the relevant case law, applied to the facts of this case, justifies a decision in [appellant's] favor"); 128 Ohio St.3d 512, 2011-Ohio-1788, 947 N.E.2d 655, ¶ 56–57 (rejecting argument on the basis that appellant did not "even purport to cite a specific legal authority that prohibit[ed]" the complained-of action).

{¶ 15} IEU does use the word "unreasonable" to describe the order—but simply asserting that a decision is unreasonable is not enough. See, e.g., id. at ¶ 57 ("Conclusory assertions that the commission 'cannot' do something fall well short of demonstrating reversible error"). IEU does not go on to provide a persuasive explanation of why or how the order fails to accord with reason. Nor does it explain which statute requires reasonableness, or what that standard entails, or how the order fails to abide by that standard.

{¶ 16} IEU also points out that the commission had suggested in other cases that additional proceedings were necessary. Again, however, IEU does not explain how the law is being violated. In any event, the commission asserts that the "additional proceedings" are in fact taking place in another docket, and IEU does not explain why these proceedings are insufficient.

{¶ 17} IEU has done little more than register its disagreement with the commission's approach. That is not enough to justify reversal. We presume that orders are reasonable; it falls to the appellant to upset that presumption. See *Columbus v. Pub. Util. Comm.* (1959), 170 Ohio St. 105, 10 O.O.2d 4, 163 N.E.2d 167, paragraph two of the syllabus. IEU has not carried that burden here.

3. We Do Not Decide the Legality of the Commission's Approach

{¶ 18} Frankly, we find it questionable whether the law permits the commission to increase rates without first reviewing the reasonableness and lawfulness of the rates themselves. But we also presume orders to be reasonable, and IEU must upset that presumption; it is not the other way around. See id.; see also *E. Ohio Gas Co. v. Pub. Util. Comm.* (1940), 137 Ohio St. 225, 249, 18 O.O. 10, 28 N.E.2d 599.

{¶ 19} While there may be exceptions, it is not generally the proper role of this court to develop a party's arguments. See, e.g., *Sizemore v. Smith* (1983), 6 Ohio St.3d 330, 333, 6 OBR 387, 453 N.E.2d 632, fn. 2; see also *Henderson v. Shinseki* (2011), __ U.S. __, 131 S.Ct. 1197, 1202, 179 L.Ed.2d 159 ("Courts do

not usually raise * * * arguments on their own"). On the contrary, the failure to present an argument usually constitutes waiver of that argument, and this general rule is only heightened in appeals governed by R.C. 4903.10, which jurisdictionally bars us from considering arguments not raised before the commission on rehearing ("No party shall in any court urge or rely on any ground for reversal, vacation, or modification not so set forth in the application [for rehearing]"). See *Ohio Consumers' Counsel v. Pub. Util. Comm.*, 127 Ohio St.3d 524, 2010-Ohio- 6239, 941 N.E.2d 757, ¶ 23. Finally, as a matter of basic fairness, IEU's failure to identify a legal problem with the commission's approach deprived the commission of an informed opportunity to set things right. See, e.g., *Parma v. Pub. Util. Comm.* (1999), 86 Ohio St.3d 144, 148, 712 N.E.2d 724 ("we do not accept * * * objections" when appellant has "deprived the commission of an opportunity to redress any injury or prejudice that may have occurred").

{¶ 20} Accordingly, we affirm because IEU has failed to meet its burden to identify a legal problem with the commission's order. To be clear, however, our decision does not endorse or ratify the commission's approach. Nor do we hold that the commission's approach below was reasonable and lawful.

### III. Conclusion

{¶ 21} Because of IEU's failure to meet its burden, we must affirm, although the commission does not derive the precedential benefit from this court's decision. We hold simply that IEU has given us no reason to reverse. For the foregoing reasons, we affirm.

Order affirmed.

PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

_____

McNees, Wallace & Nurick, L.L.C., Samuel C. Randazzo, and Joseph E. Oliker, for appellant.

Michael DeWine, Attorney General, and Thomas G. Lindgren, William L. Wright, and Thomas W. McNamee, Assistant Attorneys General, for appellee, Public Utilities Commission of Ohio.

Steven T. Nourse and Matthew J. Satterwhite, for intervening appellees, Columbus Southern Power Company and Ohio Power Company.

_____