[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Ware v. Pierce*, Slip Opinion No. 2024-Ohio-2663.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-2663

THE STATE EX REL. WARE *v.* PIERCE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Ware v. Pierce*, Slip Opinion No. 2024-Ohio-2663.]**

*Mandamus—Public-records requests—Requester failed to meet his burden to show a clear legal right to the requested relief and a clear legal duty of the respondent to provide the relief sought—Writ denied.*

(No. 2023-0101—Submitted January 9, 2024—Decided July 16, 2024.)

IN MANDAMUS.

_____

The per curiam opinion below was joined by KENNEDY, C.J., and FISCHER, DONNELLY, STEWART, and BRUNNER, JJ.  KENNEDY, C.J., authored a concurring opinion.  DEWINE, J., concurred in judgment only, with an opinion joined by DETERS, J.

**Per Curiam.**

{¶ 1} Relator Kimani E. Ware brought this original action in mandamus under Ohio's Public Records Act, R.C. 149.43, requesting (1) a writ of mandamus ordering respondent to produce public records and (2) an award of statutory damages. The sole named respondent, John Pierce, is employed by Aramark Correctional Services, L.L.C. ("Aramark"), a private company that provides food service for Ohio Department of Rehabilitation and Correction's ("ODRC") facilities. We previously denied Ware's amended application for default judgment and granted an alternative writ, ordering the parties to submit evidence and file briefs. 2023-Ohio-1769.

{¶ 2} Ware fails to meet his burden to show a clear legal right to the requested relief and that Pierce had a clear legal duty to provide the relief he sought under the Public Records Act. We therefore deny the request for a writ of mandamus.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 3} On October 21, 2021, Ware sent an electronic kite to the food-service department at Trumbull Correctional Institution ("TCI"). Ware requested "a copy of the men's fall/winter 3 week cycle food menu." Pierce, the food-service manager at TCI, responded that "[w]e only give a copy to the Unit managers to put up in the dorms." Pierce is employed by Aramark, which provides food service to TCI.

{¶ 4} On December 9, 2021, Ware sent another electronic kite to the food-service department. He requested "a copy of the record that document[s] the calorie count for each meal . . . from December 1, 2021 thru December 9, 2021." Pierce responded three days later, writing, "You can get that from the dieticians." On December 12, Ware sent another kite reiterating his December 9 request. Pierce responded to that kite, stating, "Food service does not document calories. You have to see the dieticians to get the calorie counts for meals." Ware then sent a kite to TCI's health department on December 13, writing, "[I] just want to ask a question

[does] foodservice document the calories for each meal served to inmates, breakfast, lunch, and dinner?" Ware received a response the next day that said, "Please send this to food service."

{¶ 5} On January 25, 2023, Ware filed a complaint against Pierce seeking a writ of mandamus ordering the production of the requested records and requesting court costs and statutory damages. Service of the complaint on Pierce was perfected on January 30. Pierce's counsel filed a notice of appearance on March 3, but no motions or responsive pleadings were filed on Pierce's behalf at that time. Ware subsequently filed an application for default judgment on March 30.

{¶ 6} On April 11, Pierce moved the court to strike Ware's application for default judgment or, in the alternative, to provide him with an extension of time to respond. In the motion, Pierce asserted that he was never served with a copy of Ware's default-judgment application. On April 26, this court denied Pierce's motion to strike, but ordered Ware to serve Pierce with a copy of the application for default judgment and granted Pierce permission to file a response to the application within ten days of the court's order. 2023-Ohio-1342.

{¶ 7} On May 3, Ware filed an amended application for default judgment; Pierce filed a response on May 5. In his response, Pierce argued that Ware's application should be denied and that the case should be decided—and dismissed— on the merits. Among other things, Pierce argued that the complaint should be dismissed because he is not a public official, and therefore had no duty to respond to Ware's requests.

{¶ 8} On May 31, this court issued an order denying Ware's amended application for default judgment and granted an alternative writ, ordering the filing of evidence and briefs. 2023-Ohio-1769. Both parties timely filed evidence and briefs. Ware did not file a reply brief.

## II.  ANALYSIS

### A.  *Public Records Act*

**{¶ 9}** "[U]pon request by any person, a public office or person responsible for public records shall make copies of the requested public record available to the requester at cost and within a reasonable period of time."  R.C. 149.43(B)(1).

**{¶ 10}** Mandamus is an appropriate remedy to compel compliance with the Public Records Act.  *See* R.C. 149.43(C)(1)(b).  To be entitled to a writ of mandamus, Ware must establish, by clear and convincing evidence, that he has a clear legal right to the requested relief and that respondent has a clear legal duty to provide it.  *See State ex rel. Cincinnati Enquirer v. Sage*, 2015-Ohio-974, ¶ 10. Unlike other mandamus cases, "[r]elators in public-records mandamus cases need not establish the lack of an adequate remedy in the ordinary course of law."  *State ex rel. Am. Civ. Liberties Union of Ohio, Inc. v. Cuyahoga Cty. Bd. of Commrs.*, 2011-Ohio-625, ¶ 24.

### B.  *Functional-Equivalency Test*

**{¶ 11}** Pierce argues that he is not a public official nor is his employer a public office and that he therefore has no obligations under the Public Records Act. A "public office" is "any state agency, public institution, political subdivision, or other organized body, office, agency, institution, or entity established by the laws of this state for the exercise of any function of government."  R.C. 149.011(A).  A "public official" "includes all officers, employees, or duly authorized representatives or agents of a public office."  R.C. 149.011(D).  Pierce maintains that he is not a public official because he is employed by Aramark, a private company that is contracted to provide food service for TCI.  He argues that, as a private company, Aramark is not a "public office" within the meaning of the Public Records Act.

**{¶ 12}** This court has adopted the functional-equivalency test to determine if private entities are effectively public institutions and therefore "public offices"

under R.C. 149.011(A). *State ex rel. Repository v. Nova Behavioral Health, Inc.*, 2006-Ohio-6713, ¶ 21-23. "We adopted the functional-equivalency test in *Oriana House* because it is best suited to the overriding purpose of the Public Records Act, which is 'to allow public scrutiny of public offices, not of all entities that receive funds that at one time were controlled by the government.' " *Id.* at ¶ 24, quoting *State ex rel. Oriana House, Inc. v. Montgomery*, 2006-Ohio-4854, ¶ 36.

{¶ 13} The functional-equivalency test begins with the presumption that "'[p]rivate entities are not subject to the Public Records Act absent a showing by clear and convincing evidence that the private entity is the functional equivalent of a public office.' " *Repository* at ¶ 22, quoting *Oriana House* at paragraph one of syllabus; *see also Oriana House* at ¶ 26. To determine whether a private entity is the functional equivalent of a public office, the test directs courts to consider "all pertinent factors, including (1) whether the entity performs a governmental function, (2) the level of government funding, (3) the extent of government involvement or regulation, and (4) whether the entity was created by the government or to avoid the requirements of the Public Records Act." *Oriana House* at paragraph two of the syllabus. Although Ware brought this action against Pierce and not Aramark, this court has employed this analysis even when the named respondent is an employee of a private entity. *See State ex rel. Bell v. Brooks*, 2011-Ohio-4897, ¶ 1.

{¶ 14} The record of this case lacks sufficient evidence addressing the elements of this test. Ware submitted an affidavit detailing his correspondence with Pierce, which is supported by copies of his electronic kites. Pierce's evidence consists only of his own affidavit testimony, which outlines his employment with Aramark and denies that he is employed by TCI. As the party seeking relief, it is Ware's burden to show that Aramark is subject to the Public Records Act. *See State ex rel. Harm Reduction Ohio v. OneOhio Recovery Found.*, 2023-Ohio-1547, ¶ 12.

5

### 1. Governmental Function

{¶ 15} "The first factor of the functional-equivalency test asks whether the private entity performs a 'historically governmental function' or one traditionally performed by private entities." *Harm Reduction* at ¶ 14, quoting *Bell* at ¶ 22. "The administration of prisons has traditionally been a uniquely governmental function." *Oriana House*, 2006-Ohio-4854, at ¶ 28; *see also* R.C. 2744.01(C)(2)(h) ("Governmental functions" include "operation of jails, places of juvenile detention, workhouses, or any other detention facility").

{¶ 16} According to Pierce, Aramark provides food service to the inmates at TCI. At the time of Ware's requests, Pierce was a food service manager for Aramark at TCI.

### 2. Level of Governmental Funding

{¶ 17} "'The fact that a private entity receives government funds does not convert the entity into a public office for purposes of the Public Records Act.' " *Harm Reduction*, 2023-Ohio-1547, at ¶ 19, quoting *Oriana House* at ¶ 29. "However, the level of government funding an entity receives is a relevant factor to consider." *Id.*, citing *Oriana House* at ¶ 32.

{¶ 18} Here, there is no evidence about the level of funding that Aramark receives from the State. Pierce's evidence indicates that Aramark provides food service to TCI pursuant to a contract. However, the record is silent on the value of that contract and on Aramark's other sources of funding.

### 3. Extent of Governmental Involvement or Regulation

{¶ 19} In analyzing the role of governmental involvement or regulation, we must consider to what extent "'any government entity controls the day-to-day operations' of the private entity." *Harm Reduction* at ¶ 24, quoting *Oriana House*, 2006-Ohio-4854, at ¶ 33. However, the parties' briefs and evidence are also silent on this matter. While Pierce's testimony indicates he was a food service "manager" for Aramark at TCI, his testimony is silent as to whether he reported to State

employees at TCI or to an Aramark supervisor. There is similarly no information about Aramark's relationship with ODRC, such as whether Aramark's employees are subject to any or all of the State agency's regulations. Ware's evidence does not address this question.

### 4. Creation of the Entity

{¶ 20} "The fourth factor of the functional-equivalency test is whether the entity was either created by the government or established 'as the alter ego of a governmental entity to avoid the requirements of the Public Records Act.' " *Harm Reduction*, 2023-Ohio-1547, at ¶29, quoting *Oriana House* at ¶ 34. The record shows that Aramark is a private corporation and, as such, we can infer that it was not created by the state to avoid compliance with the Public Records Act.

### 5. Weighing of the Factors

{¶ 21} As noted above, the evidence submitted by the parties sheds little light on whether Aramark is effectively a public office. The government-function factor seems to be the strongest in favor of such a finding: Aramark provides food service to inmates at TCI and operating a prison is a traditional government function. *Oriana House* at ¶ 28. The question then becomes whether Aramark's assistance in only one component of the prison's operations qualifies as performing a traditional government function. But that is a question we need not answer today since the barren record in this case leads us to find that there is insufficient evidence to weigh the remaining factors.

{¶ 22} Indeed, except for the creation-of-the-entity factor, this court is left with more questions than answers. As a private corporation providing a service for a state agency, this court can surmise that Aramark is paid for its services. However, there are no details about Aramark's contract to provide services other than a passing reference to its existence. There is similarly no evidence about the level of control that TCI or ODRC exerts over Aramark or its employees.

**{¶ 23}** A requesting party must "establish entitlement to the requested extraordinary relief by clear and convincing evidence." *State ex rel. McCaffrey v. Mahoning Cty. Prosecutor's Office*, 2012-Ohio-4246, ¶ 16. Here, the evidence establishes that Pierce's employer is Aramark and not TCI. Ware has provided no evidence, nor made any argument, calling that into question. Ware is therefore required to show that Pierce, as an employee of a private entity, had a duty to respond to his records requests under the functional-equivalency test. But Ware has provided no evidence to address the factors of that test.

**{¶ 24}** Ware has failed to show, based on the record in this case, that the relationship between Aramark and TCI, the State agency, makes Aramark the functional equivalent of a public office. As a result, his request for a writ of mandamus is denied.

### III. CONCLUSION

**{¶ 25}** Ware has failed to show by clear and convincing evidence that Pierce's employer is the functional equivalent of a public office. Pierce therefore has no duty to provide Ware with the records he requested. For these reasons, we deny Ware's request for a writ of mandamus.

Writ denied.

---

**KENNEDY, C.J., concurring.**

**{¶ 26}** I concur in the majority's judgment denying relator Kimani Ware's request for a writ of mandamus seeking records from respondent John Pierce. I further concur in the majority's reasoning supporting that judgment. I write separately, however, to address some of the concerns expressed in the opinion concurring in judgment only. Because the majority opinion addresses arguments raised by the parties that are relevant to the disposition of this case, the majority opinion charts the appropriate course in its ultimate determination.

{¶ 27} These are the pertinent facts. Ware made three separate requests to the food-service department at Trumbull Correctional Institution for certain records. Ware made these requests via "electronic kite," which are sent through an electronic communication system that is used by inmates at the institution. Inmates may send electronic kites for "routine problem solving and communication," and recipients of the kites include the institution's departments and unit staff.

{¶ 28} Pierce responded to all three of Ware's requests. In those responses, Pierce did not identify himself as an employee of Aramark Correctional Services, L.L.C.; he responded on behalf of the institution's food-service department. In the first response, Pierce explained that the requested records are given only to "unit managers." In the second and third responses, Pierce told Ware that Ware could get the records elsewhere. And after each response, Pierce closed the kite.

{¶ 29} Now, turning to this action, Ware seeks to obtain the sought-after records. Ware alleges that Pierce is a "public official" who is subject to, and who violated, the Public Records Act, R.C. 149.43. Ware's complaint states that "Pierce is a public official as the term is defined by [R.C.] 149.011(D)." He further argues in his complaint and merit brief that Pierce was responsible for the requested records, that Pierce denied the records requests, and that those denials "breached [Pierce's] duties pursuant to [R.C.] 149.43(B)(1)," the statutory provision that prescribes liability under the Public Records Act.

{¶ 30} In alleging that Pierce was subject to, and violated, the Public Records Act, Ware does not explicitly question Pierce's employment status. But Pierce raises the issue—three times in fact. In two instances, Pierce disclaims that his employer, Aramark, was the functional equivalent of a government entity, citing *State ex rel. Oriana House, Inc. v. Montgomery*, 2006-Ohio-4854—first, in his response to Ware's amended motion for default judgment, and then again in his merit brief. In the third instance, Pierce raises the issue of his employment status in his answer to Ware's complaint, asserting as an affirmative defense that he "does

not work for a public office as defined by the Ohio Public Records Act." Relatedly, in an affidavit that he submitted as evidence in this case, Pierce avers that at the time he responded to Ware's requests, he "worked as a food service manager" for Aramark "at the Trumbull Correctional Institution."

{¶ 31} Pause for a moment to consider Ware's point of view. Ware is incarcerated in a correctional institution, a government entity. He requested records using the institution's system for communication and problem solving with departments and unit staff. He requested the records from a department within the institution. And the person who responded to his requests, Pierce, did not say, "I am not a public official," or, "I work for a company that is not a public office and is not the functional equivalent of a government entity." Instead, the person who responded outright denied the requests for records and closed the kites related to those requests. From Ware's perspective, it would have been logical to assume that Pierce, who was using the institution's communication system and responding to an inmate's requests for records, was a public official. It was not until after Ware filed his complaint in this action that he first learned of Pierce's arguments.

{¶ 32} If Pierce does not have the authority to respond to records requests on behalf of the institution, then why is Pierce accessing a communication system used by inmates for communication and problem solving with the institution's departments and unit staff? The institution needs tighter control over access to its communication system and should limit such access to public officials. Aramark and its employees should resist any obligation to respond on behalf of the institution to public-records requests sent by inmates if they do not have authority to respond to such requests. Inmates have substantive, statutory rights to access public records, and neither the government nor its contractors may thwart those rights. Despite these troubling facts, the majority reaches the correct result and takes the correct path in doing so.

10

{¶ 33} The opinion concurring in judgment only disagrees. It raises a few issues apart from those just mentioned, none of which are cause for concern. First, the opinion takes issue with the form of Ware's request to Pierce, specifically lamenting that Ware did not "indicate that he was requesting a public record or suggest that Pierce or Pierce's employer had an obligation to comply with the Public Records Act." Opinion concurring in judgment only, ¶ 43. But the Public Records Act does not mandate such rigidity in records requests. *See Franklin Cty. Sheriff's Dept. v. State Emp. Relations Bd.*, 63 Ohio St.3d 498, 504 (1992) ("No specific form of request is required by R.C. 149.43.").

{¶ 34} Even so, the opinion concurring in judgment only still quarrels with the sufficiency of Ware's requests, suggesting that the requests would not have put an employee of a private company on notice that Ware was submitting a public-records request. So what? The text of the Public Records Act does not require a requester to use magic words or give notice that they are making a request. *See* R.C. 149.43. So, any concern over notice is all for naught.

{¶ 35} Second, the opinion concurring in judgment only posits that Ware has failed to make "any" arguments about whether Pierce is a "public official," and it disagrees with the majority's decision to perform a functional-equivalency analysis. Opinion concurring in judgment only at ¶ 45. But these positions ignore Ware's and Pierce's pleadings and arguments.

{¶ 36} Ware's complaint alleges that Pierce was a "public official," which is defined as "all officers, employees, or duly authorized representatives or agents of a public office." R.C. 149.011(D). So, the crux of Ware's arguments is that Pierce is a public official who maintains and is responsible for the sought-after records, and that Pierce is subject to the Public Records Act. Therefore, Ware argues, Pierce violated his duty to produce public records under R.C. 149.43(B)(1) when he failed to provide the records that Ware had requested. Ware supports these arguments by producing evidence—namely, his kites and an affidavit. Pierce

rebuts Ware's arguments by asserting an affirmative defense in his answer and by producing his own evidence.

{¶ 37} The issue then becomes an evidentiary one: whether, based on the competing evidence, Ware can plead and prove by clear and convincing evidence that Pierce is a public official subject to the Public Records Act. *See Welsh-Huggins v. Jefferson Cty. Prosecutor's Office*, 2020-Ohio-5371, ¶ 22, 26; *see also State ex rel. Cincinnati Enquirer v. Sage*, 2015-Ohio-974, ¶ 10. For Pierce to be a "public official" and therefore subject to the Public Records Act, Pierce's employer must be a public office or the functional equivalent of a public office—a contention that Pierce disputes three separate times. Here, the majority correctly denied Ware's petition for a writ of mandamus because there is insufficient evidence to prove that Pierce is a public official or that his employer is the functional equivalent of a public office.

{¶ 38} As the opinion concurring in judgment only acknowledges, "'we rely on the parties to frame the issues for decision,'" (emphasis deleted) opinion concurring in judgment only at ¶ 44, quoting *Greenlaw v. United States*, 554 U.S. 237, 243 (2008), and the majority here resolves the issue of functional equivalency as framed by Pierce. Therefore, the majority does not err in addressing whether Pierce's employer is the functional equivalent of a government entity.

{¶ 39} In sum, although Ware's legal arguments are not robust, the majority opinion appropriately addresses the relevant issues at hand to resolve this case.

{¶ 40} Therefore, I concur in the majority opinion.

_____

**DEWINE, J., joined by DETERS, J., concurring in judgment only.**

{¶ 41} I concur in the majority's decision to deny Kimani Ware a writ of mandamus but would do so without reaching the functional equivalency analysis. In this case, Ware has sued John Pierce, the employee of a private food-service

company, seeking to compel Pierce to turn over cafeteria menus and related materials maintained by his employer.

**{¶ 42}** The Public Records Act applies to records kept by a "public office." R.C. 149.43(A)(1). "Private entities are not subject to the Public Records Act absent a showing by clear and convincing evidence that the private entity is the functional equivalent of a public office." *State ex rel. Oriana House, Inc. v. Montgomery*, 2006-Ohio-4854, paragraph one of the syllabus.

**{¶ 43}** When he requested the information, Ware did not in any way indicate that he was requesting a public record or suggest that Pierce or Pierce's employer had an obligation to comply with the Public Records Act.[1] Moreover, Ware has not in this action presented any argument that Pierce is a public official. Nor has he presented any argument that Pierce's employer is the functional equivalent of a government entity. *See id.* I would deny the writ on this basis alone.

**{¶ 44}** The majority, however, engages in a full-blown analysis of whether Pierce's employer is the functional equivalent of a government entity, filling in the blanks in the record to take analytical steps that Ware has failed to take. For example, the majority surmises that "[t]he government-function factor *seems to be* the strongest" in favor of finding that the food-service company conducts functionally equivalent operations to those of a public office. (Emphasis added.) Majority opinion, ¶ 21. The principle of party presentation, however, requires that "we rely *on the parties* to frame the issues for decision" and "assign[s] to courts the role of neutral arbiter of matters the parties present." (Emphasis added.) *Greenlaw v. United States*, 554 U.S. 237, 243 (2008); *see also Von Stein v. Brandenburg*,

---

1. The concurring opinion takes issue with this statement, concurring opinion, ¶ 33, quoting *Franklin Cty. Sheriff's Dept. v. State Emp. Relations Bd.*, 63 Ohio St.3d 498, 504 (1992), for the proposition that "[n]o specific form of request is required by R.C. 149.43." But that quoted language doesn't mean that asking the employee of a private company for a menu somehow puts that employee on notice that the requestor is submitting a public-records request.

2023-Ohio-4481, ¶ 16, fn. 5 (12th Dist.) (explaining the party-presentation principle and its exceptions).

**{¶ 45}** The concurring opinion attempts to vindicate the majority's approach while also conceding that "Ware does not explicitly question Pierce's employment status," concurring opinion at ¶ 30, despite Ware's legal burden to demonstrate that Pierce is the functional equivalent of a government entity. *See State ex rel. Griffin v. Sehlmeyer*, 2022-Ohio-2189, ¶ 9. ("in a public-records mandamus case, the relator bears the burden of showing his entitlement to the writ by clear and convincing evidence"). The concurring opinion justifies the majority's decision to go beyond the arguments raised by the parties by noting that *Pierce* referenced *Oriana House* in his briefing. This is a stretch. Just review Pierce's merit brief, which is available on the court's website at: https://www.supremecourt.ohio.gov/pdf_viewer/pdf_viewer.aspx?pdf=946530.pd f&subdirectory=2023-0101\DocketItems&source=DL_Clerk. Pierce's argument focuses on the fact that he is not a public official and does not work for a public office. He mentions *Oriana House* only in passing, noting that "[p]rivate entities are not subject to public records law unless there is clear and convincing evidence that they are a 'functional equivalent of a public office.' "

**{¶ 46}** In choosing to develop Ware's arguments for him, the majority and concurring opinions ignore the principle of party presentation. But our role is not to "'sally forth each day looking for wrongs to right. We wait for cases to come to us, and when they do we normally decide only questions presented by the parties.' " *Greenlaw* at 244, quoting *United States v. Samuels*, 808 F.2d 1298, 1301 (8th Cir. 1987) (Arnold, J., concurring in denial of rehearing en banc); *see also In re Application of Columbus S. Power Co.*, 2011-Ohio-2638, ¶ 19 (emphasizing that "it is not generally the proper role of this court to develop a party's arguments").

**{¶ 47}** Here, all the justices of this court agree that Ware has not raised any argument about the functional equivalency test. Absent input from the parties, we

have no occasion to identify and analyze what we *perceive* to be the "strongest" arguments in favor of any position under that test. We should not play attorney for one side and develop arguments that the party failed to raise. Because the majority's analysis goes too far, I concur in the majority's judgment only.

_____

Kimani E. Ware, pro se.

Dickie, McCamey & Chilcote, P.C., and Kristin L. Wedell, for respondent.

_____