[Cite as *In re Application of Black Fork Wind Energy, L.L.C.,* 138 Ohio St.3d 43, 2013-Ohio-5478.]

IN RE APPLICATION OF BLACK FORK WIND ENERGY, L.L.C., FOR A CERTIFICATE TO SITE A WIND-POWERED ELECTRIC-GENERATION FACILITY IN RICHLAND AND CRAWFORD COUNTIES, OHIO; BIGLIN ET AL., APPELLANTS; POWER SITING BOARD ET AL., APPELLEES.

[Cite as *In re Application of Black Fork Wind Energy, L.L.C.,*

138 Ohio St.3d 43, 2013-Ohio-5478.]

*Power Siting Board—Wind-powered electric-generation facility—Board's determination approving siting of facility affirmed—Appellants were not denied the opportunity to cross-examine staff members—No due-process violation.*

(No. 2012-0900—Submitted August 21, 2013—Decided December 18, 2013.)

APPEAL from the Power Siting Board, No. 10-2865-EL-BGN.

————————————

KENNEDY, J.

{¶ 1} Appellants, Gary J. Biglin, Brett A. Heffner, Alan Price, Catherine Price, and John Warrington, appeal from an order of the Power Siting Board issuing a certificate to Black Fork Wind Energy, L.L.C., to construct a proposed wind-powered electric-generation facility, or wind farm, in portions of Richland and Crawford Counties. In their only remaining proposition of law, appellants argue that the board violated their "right to procedural due process by disallowing the appellants from conducting cross-examination on staff members" and "prohibiting the presentation of evidence" at the evidentiary hearing on Black Fork's application to site the project. After review, we hold that the board did not prevent appellants from cross-examining any witness or presenting evidence, and therefore, appellants have not established that the board violated their due-process

rights. Because appellants have not established that the board's order is unlawful or unreasonable, the board's order is affirmed.

## I. Facts and Procedural History

A. *The proposed project*

{¶ 2} The Power Siting Board has exclusive authority to issue certificates of environmental compatibility and public need for construction, operation, and maintenance of "major utility facilities," such as the proposed wind farm at issue here. *In re Application of Buckeye Wind, L.L.C.*, 131 Ohio St.3d 449, 2012-Ohio-878, 966 N.E.2d 869, ¶ 2; R.C. 4906.01, 4906.03, and 4906.13. In March 2011, Black Fork filed an application to construct a wind farm consisting of up to 91 turbines in portions of Crawford and Richland Counties. In addition to the turbines, Black Fork's project includes access roads, electrical collection lines, a construction-staging area, a concrete-batch plant, a substation, and an operation and maintenance facility. The project area covers approximately 24,000 acres of land, and the facilities will be located on approximately 14,800 acres of leased private land with 150 participating landowners. According to Black Fork's application, voluntary agreements have been signed by the participating property owners within the project area. Black Fork claims that the facility will provide up to 200 megawatts of renewable energy "with effectively zero air emissions and waste generation."

B. *Proceedings before the board*

{¶ 3} Upon receipt of Black Fork's application, the board's staff conducted an investigation into the environmental and other impacts of the proposed wind farm, and on August 31, 2011, the staff filed a report recommending that 71 conditions become a part of any certificate issued for the proposed facility. By that time, intervening-party status had been granted to the following entities and individuals: the boards of commissioners of Crawford and Richland Counties; the Richland County engineer; the boards of trustees of

Plymouth, Sharon, and Sandusky Townships; the Ohio Farm Bureau Federation; appellants, who claimed to live near the leased land or within the boundaries of the project area; and ten other local residents.

{¶ 4} Because appellants, as well as certain other parties, were acting pro se, the board's administrative law judge ("ALJ") believed that it was "important to provide some clarification of the procedures" prior to the evidentiary hearing. Accordingly, in an August 31, 2011 order, the ALJ explained that the purpose of the upcoming evidentiary hearing was "to allow the parties to the case the opportunity to present sworn testimony subject to cross-examination that will form the evidentiary record that the board will weigh and consider in arriving at its formal decision on the merits of the application." The ALJ explained that the parties would

> not only be allowed to present testimony at the evidentiary hearing (on their own behalf or through the testimony of witnesses that they bring to the hearing, so long as such testimony is timely filed by September 15, 2011), but [would] also have the right to cross-examine all other parties' witnesses who appear and testify at the evidentiary hearing.

{¶ 5} Black Fork thereafter prefiled the direct testimony of ten witnesses that it planned to call at the evidentiary hearing, and the board's staff prefiled the testimony of eight witnesses. Of the board's staff witnesses, seven authored sections of the staff's report, and the eighth, Jon Pawley, managed the staff's investigation and compiled the final report. Appellants prefiled their own written testimony, but they did not prefile the testimony of other witnesses.

{¶ 6} At the request of the board's staff, an ALJ issued an entry prior to the scheduled September 19, 2011 evidentiary hearing, converting the first day of

the hearing into a settlement conference. The ALJ also directed the staff and intervenors to bring to that settlement conference "a list of the witnesses they [would] be calling to testify at the evidentiary hearing, along with the dates that they [would] be available to testify." Upon commencement of the settlement conference, one of the two ALJs present requested that the parties first discuss "the order of witnesses that might be scheduled." After that off-the-record discussion, an ALJ summarized the schedule of witnesses as follows: Black Fork's witnesses would testify on September 21, 22, and 23; the witnesses for the county commissioners and the township trustees would testify on the afternoon of September 23; the staff witnesses would testify on September 26 and 27; and the remaining intervenors would testify on September 28 and 30, if necessary.

{¶ 7} Settlement negotiations proved fruitful, and the date for the start of the evidentiary hearing was continued. Black Fork, the board's staff, and the Ohio Farm Bureau Federation eventually entered into a joint stipulation recommending that the board approve the project subject to 71 conditions. The same parties later filed an amendment to the stipulation that added nine conditions and included the approval of the Crawford County Board of Commissioners. None of the appellants signed the stipulation.

{¶ 8} The evidentiary hearing commenced on October 11, 2011. Each appellant participated in the hearing by cross-examining witnesses, including those from Black Fork, the board's staff, and the county commissioners, and each appellant testified. Even though the staff had prefiled the testimony of eight witnesses, the only staff member who testified was Pawley, the project manager who had overseen the compilation of the staff report. Four appellants cross-examined Pawley; appellant Alan Price had no questions for him. No appellant objected to the introduction of Pawley's testimony, to the staff's decision to present only Pawley, or to the fact that other board staff members were not present. And while appellant Warrington requested that Pawley's testimony—and

the hearing—be suspended so that a noise standard could be completed and reviewed by experts, the transcript does not indicate that Warrington, or any other appellant, requested that the hearing be suspended or continued so that they could subpoena additional staff witnesses or otherwise compel the attendance of more staff witnesses.

*C. Appellants' appeal*

{¶ 9} In January 2012, the board issued its order approving the stipulation and granting a certificate for construction of the proposed wind farm, subject to the 80 conditions set forth in the stipulation. Each appellant filed an individual application for rehearing, all of which were denied. Appellants thereafter joined together, obtained counsel, and timely appealed to this court. We granted Black Fork's motion for leave to intervene, and Black Fork later moved to dismiss the appeal, arguing that appellants failed to preserve most of their appellate arguments by not raising them below and failed to properly identify certain arguments in their notice of appeal. We granted Black Fork's motion in part, dismissing appellants' first and second propositions of law in their entirety and dismissing a portion of appellants' third proposition of law relating to the alleged deprivation of an opportunity to cross-examine an independent engineer about decommissioning costs. *In re Application of Black Fork Wind Energy, L.L.C.*, 134 Ohio St.3d 1506, 2013-Ohio-1123, 984 N.E.2d 1100. Appellants' remaining due-process arguments from their third proposition of law are now before the court.

## II. Legal Analysis

*A. Standard of review*

{¶ 10} Pursuant to R.C. 4906.12, we apply the same standard of review to power-siting determinations that we apply to orders of the Public Utilities Commission. *Buckeye Wind*, 131 Ohio St.3d 449, 2012-Ohio-878, 966 N.E.2d 869, at ¶ 26. "R.C. 4903.12 applies to board proceedings pursuant to R.C.

4906.12 and provides that an order 'shall be reversed, vacated, or modified by this court only when, upon consideration of the record, the court finds the order to be unlawful or unreasonable.' " *In re Application of Am. Transm. Sys., Inc.*, 125 Ohio St.3d 333, 2010-Ohio-1841, 928 N.E.2d 427, ¶ 17, quoting *Constellation NewEnergy, Inc. v. Pub. Util. Comm.*, 104 Ohio St.3d 530, 2004-Ohio-6767, 820 N.E.2d 885, ¶ 50. We have, however, " 'complete and independent power of review as to all questions of law' " in appeals from the board. *Ohio Consumers' Counsel v. Pub. Util. Comm.*, 121 Ohio St.3d 362, 2009-Ohio-604, 904 N.E.2d 853, ¶ 13, quoting *Ohio Edison Co. v. Pub. Util. Comm.*, 78 Ohio St.3d 466, 469, 678 N.E.2d 922 (1997).

*B. The board's order is neither unlawful nor unreasonable*

{¶ 11} Appellants claim that they were denied the opportunity to cross-examine the seven board staff members responsible for drafting sections of the staff report and were thereby prohibited from presenting evidence at the hearing. Specifically, appellants assert that after the board's staff entered into the stipulation, the staff "unilaterally pulled" the seven drafters of the report from testifying and called Pawley as the only staff witness. But Pawley, according to appellants, could not answer all of their questions on cross-examination. In appellants' words, "[b]y not having the [seven other] Staff members available at the evidentiary hearing it effectively denied the appellants their statutory right of participation under R.C. 4906.08 and their right to procedural due process." Appellants request that we reverse the board's order, remand for a new evidentiary hearing, and compel the attendance of the seven other staff members responsible for drafting the staff's report.

{¶ 12} For the following reasons, appellants' arguments are not well taken.

6

*1. Appellants have not established that more board staff members were required to appear and testify at the evidentiary hearing*

{¶ 13} In order for us to determine whether appellants were denied the opportunity to cross-examine the staff members, appellants must first demonstrate that the attendance of the seven additional staff members was compulsory. Appellants, however, point to nothing in the record, applicable statutes and administrative rules, or our precedents that obligated the seven staff members to appear and testify at the evidentiary hearing.

{¶ 14} Appellants primarily rely on an ALJ's alleged "representation" at the September 19, 2011 settlement conference that the staff members would be available to testify on September 26 and 27, when it was anticipated that the evidentiary hearing would continue through those dates. But appellants misinterpret the ALJ's comment. The ALJ, in summarizing the dates on which each party would present its witnesses, merely indicated that September 26 and 27 would be the dates for the staff witnesses to testify. The ALJ did not order that all staff members previously identified as witnesses be present at the hearing and subject to appellants' cross-examination, nor was it reasonable for appellants to interpret the ALJ's scheduling comment as a mandate that the board's staff call each staff member it had previously identified to testify.

{¶ 15} Appellants also suggest that because the staff prefiled the direct testimony of the seven staff members, the members' attendance at the hearing should have been required. But the fact that the staff prefiled their testimony did not later obligate the staff to call each as a witness. The board's administrative rules allow an ALJ to accept written, prefiled testimony, as occurred in this case. *See* Ohio Adm.Code 4906-7-01(B)(7). Prefiled written testimony, however, is unsworn and is not considered evidence. Only when a witness is sworn in at the hearing does he or she adopt the prefiled testimony under oath. "It is at this point

that the written testimony [becomes] evidence, not at the time of filing." *Duff v. Pub. Util. Comm.*, 56 Ohio St.2d 367, 374-75, 384 N.E.2d 264 (1978).

{¶ 16} Here, the board's staff prefiled the unsworn testimony of eight staff members but called only Pawley to testify at the hearing. When the staff presented Pawley, he was sworn in and adopted the prefiled direct testimony as his own. At that point, the testimony became evidence in the certification proceeding, and Pawley was subject to cross-examination. None of the prefiled testimony from the seven other staff members was evidence, nor have appellants suggested that the board improperly considered their prefiled testimony as evidence.

{¶ 17} In sum, because appellants cannot point to any board order, statute, rule, or precedent requiring the attendance of these seven staff members, appellants have not established that they were prevented from cross-examining the staff members.

*2. Appellants failed to compel the attendance of the seven staff members or to object to their absence*

{¶ 18} If appellants desired to examine the seven staff members, they also had mechanisms available to compel their attendance. Most importantly, as parties to the certification proceeding, appellants had the ability to subpoena the staff members under Ohio Adm.Code 4906-7-08. It is undisputed, however, that appellants failed to exercise that authority. A party is precluded from claiming a denial of the right of cross-examination when that party did not take advantage of the opportunity to subpoena the witness. *See Richardson v. Perales*, 402 U.S. 389, 404-405, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (claimant precluded from arguing that he was denied opportunity to cross-examine physician whose medical report was admitted into evidence when claimant failed to exercise his subpoena authority).

**{¶ 19}** Moreover, appellants not only failed to subpoena the seven staff members, they failed to object when they learned that the staff would not introduce any more staff members to testify. A party's failure to challenge an alleged error constitutes a forfeiture of the objection because it deprives the board of an opportunity to cure any error when it reasonably could have. *Ohio Consumers' Counsel v. Pub. Util. Comm.*, 127 Ohio St.3d 524, 2010-Ohio-6239, 941 N.E.2d 757, ¶ 18, citing *Parma v. Pub. Util. Comm.*, 86 Ohio St.3d 144, 148, 712 N.E.2d 724 (1999) ("By failing to raise an objection until the filing of an application for rehearing, Parma deprived the commission of an opportunity to redress any injury or prejudice that may have occurred").

**{¶ 20}** At oral argument, appellants' counsel claimed that appellants Warrington, Heffner, and Biglin had raised objections at the beginning of Pawley's testimony. But contrary to counsel's assertion, none of these appellants made an objection to the staff's decision to call only Pawley. Indeed, neither Warrington nor Biglin made any comment on the record at the beginning of Pawley's testimony. Appellant Heffner questioned an ALJ about which matters he could ask Pawley—that is, whether he could inquire about the staff report and not simply the stipulation. In response, the ALJ repeatedly advised Heffner that he could ask Pawley any question that he wanted. Even under the most liberal reading of this discussion, we cannot interpret Heffner's questions as preserving for appellate review an objection regarding the inability to cross-examine the remaining seven staff members. In the end, appellants should have objected to the absence of those staff members or at least requested an opportunity to compel their attendance. Appellants' decision to wait until the rehearing stage to raise this objection is fatal to their claim.

**{¶ 21}** Alternatively, if the testimony of these seven staff members was so critical to appellants' case, appellants could have identified the staff members in their own witness lists. An ALJ directed the intervening parties to bring to the

settlement conference "a list of the witnesses they [would] be calling to testify at the evidentiary hearing." There is no indication from the record—or from appellants' arguments on appeal—that any of them identified a board staff member as a potential witness. And appellants certainly did not attempt to call any additional staff members as witnesses during their separate presentations of evidence at the hearing—which was after the staff's presentation of evidence.

{¶ 22} Finally, the fact that appellants were acting pro se at the certification proceeding does not excuse their failure to subpoena the staff members or object to their absence. " 'It is well established that pro se litigants are presumed to have knowledge of the law and legal procedures and that they are held to the same standard as litigants who are represented by counsel.' " *State ex rel. Fuller v. Mengel*, 100 Ohio St.3d 352, 2003-Ohio-6448, 800 N.E.2d 25, ¶ 10, quoting *Sabouri v. Ohio Dept. of Job & Family Servs.*, 145 Ohio App.3d 651, 654, 763 N.E.2d 1238 (10th Dist.2001). *See also Zukowski v. Brunner*, 125 Ohio St.3d 53, 2010-Ohio-1652, 925 N.E.2d 987, ¶ 8 ("mere fact that [relator] is proceeding pro se does not entitle him to ignore these [court rules]"); *State ex rel. Leon v. Cuyahoga Cty. Court of Common Pleas*, 123 Ohio St.3d 124, 2009-Ohio-4688, 914 N.E.2d 402, ¶ 1 ("mere fact that [relator] is pro se does not entitle him to ignore the requirements of the local appellate rule").

### III. Conclusion

{¶ 23} Our review of the record indicates that appellants were permitted to intervene as parties and were actively involved throughout the certification proceeding. They participated in the prehearing and settlement conferences, cross-examined witnesses, testified themselves, and delivered closing arguments at the evidentiary hearing. And the board's 75-page order shows that it carefully considered appellants' challenges to the proposed wind farm, including their concerns about property values, the impact on bird breeding, the minimum-setback requirements, the noise impact, and the impact on county and township

roads. In short, appellants were granted the opportunity to be heard. They disagree with the board's order and now assert that they could have produced more evidence if they had been given the opportunity to question seven staff members who drafted portions of the staff report. However, appellants have failed to establish that the board's staff was under any obligation to introduce the testimony of those members, and appellants have similarly failed to explain why they did not compel the attendance of those staff members or object to their absence. Accordingly, we find that appellants were not denied the opportunity to cross-examine any staff member or to present additional evidence. Their due-process arguments therefore fail.

{¶ 24} For the foregoing reasons, appellants have not sustained their burden of showing that the board's order in this case is unlawful or unreasonable. The board's order is therefore affirmed.

Order affirmed.

O'CONNOR, C.J., and DORRIAN, O'DONNELL, LANZINGER, FRENCH, and O'NEILL, JJ., concur.

JULIA LILLIAN DORRIAN, J., of the Tenth Appellate District, sitting for PFEIFER, J.

_____

Patrick T. Murphy Law Office, Patrick T. Murphy, and Zachary L. Tidaback, for appellants.

Michael DeWine, Attorney General, and William L. Wright and Devin D. Parram, Assistant Attorneys General, for appellee.

Vorys, Sater, Seymour & Pease, L.L.P., M. Howard Petricoff, Stephen M. Howard, and Michael J. Settineri, for intervening appellee Black Ford Wind Energy, L.L.C.

Chad A. Endsley and Leah F. Curtis, urging affirmance for amicus curiae, Ohio Farm Bureau Federation.

————————————