[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Application of Buckeye Wind, L.L.C.,* Slip Opinion No. 2016-Ohio-5664.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-5664

IN RE APPLICATION OF BUCKEYE WIND, L.L.C., TO AMEND ITS CERTIFICATE ISSUED IN CASE NO. 08-666-EL-BGN; CHAMPAIGN COUNTY ET AL., APPELLANTS; POWER SITING BOARD ET AL., APPELLEES.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Application of Buckeye Wind, L.L.C.,* Slip Opinion No. 2016-Ohio-5664.]

*Power Siting Board—Application to amend siting certificate for wind-powered electric-generation facility—R.C. 4906.07(B)—Appellants failed to timely object to board's decision limiting scope of hearing—Appellants forfeited right to challenge scope of hearing on appeal.*

(No. 2014-1210—Submitted July 12, 2016—Decided September 7, 2016.)

APPEAL from the Power Siting Board, No. 13-360-EL-BGA.

_____

**O'DONNELL, J.**

{¶ 1} Champaign County and Goshen, Union, and Urbana Townships (collectively, the "county") appeal as of right from orders of the Ohio Power Siting

Board (the "board") permitting Buckeye Wind, L.L.C. ("Buckeye"), to amend its siting certificate for the "Buckeye Wind I" wind farm in Champaign County.

{¶ 2} The county contends that the board unlawfully approved Buckeye's requested amendment without holding a hearing on all proposed changes in the amendment application. R.C. 4906.07(B) provides that upon application for an amendment to a certificate, the board must hold a hearing on the application "if the proposed change in the facility would result in any material increase in any environmental impact of the facility or a substantial change in the location of all or a portion of such facility." According to the county, all the proposed changes in Buckeye's amendment application met the criteria in R.C. 4906.07(B) and therefore the board should have held a hearing on all the requested changes, rather than only a portion of them.

{¶ 3} Because the county failed to timely object to the board's decision limiting the scope of the hearing to only certain proposed changes in Buckeye's amendment application, it forfeited its right to appeal that board decision. Accordingly, we conclude that the board's decision to limit the scope of the hearing to certain proposed changes was reasonable and lawful and that the county never objected to the board's limitation, and therefore we affirm the decision of the board.

**Facts and Procedural History**

{¶ 4} In March 2012, this court affirmed a board order granting a certificate to construct Buckeye Wind I. *See In re Application of Buckeye Wind, L.L.C.*, 131 Ohio St.3d 449, 2012-Ohio-878, 966 N.E.2d 869. The proposed facility as certified consisted of 53 fully approved wind turbines, along with access roads, temporary construction staging areas, a mixture of overhead and underground electrical collection lines, a substation, and an operations and maintenance building.

{¶ 5} A few months after our decision in *Buckeye Wind*, Champaign Wind, L.L.C., a sister company to Buckeye, filed an application to construct another wind farm in Champaign County, which the developer labeled "Buckeye Wind II." In

April 2016, we affirmed the board's order authorizing Buckeye Wind II, which, as certified, consisted of 52 additional turbines, more access roads, more electrical collection lines, more construction staging areas, another substation, and an operations and maintenance facility. *See In re Application of Champaign Wind, L.L.C.*, ___ Ohio St.3d ___, 2016-Ohio-1513, ___ N.E.3d ___, ¶ 3, 5.

{¶ 6} In March 2013, while Champaign Wind's application for Buckeye Wind II was pending, Buckeye filed an application to amend the certificate for Buckeye Wind I, in part so that that Buckeye Wind I and II could share portions of their associated facilities. Specifically, Buckeye's amendment application sought to (1) move all electrical collection lines underground, (2) relocate four previously approved access roads, (3) adjust the size of the construction staging areas so that Buckeye Wind I and II could share construction zones, (4) relocate one of the construction staging areas, (5) relocate the substation so that Buckeye Wind I and II could utilize the same substation, and (6) construct one new access road. The county, a group of local residents (the "neighbors"), and others intervened in the amendment-application proceeding.

{¶ 7} On November 21, 2013, an administrative law judge ("ALJ") determined that three of the proposed changes—burying all electrical collection lines underground, relocating four access roads, and resizing the construction staging areas—did not require a hearing under R.C. 4906.07(B). No party objected to the ALJ's entry or filed an interlocutory appeal. Buckeye thereafter withdrew one of the proposed changes, which left only two of the requested amendments for consideration at the hearing.

{¶ 8} The ALJ held the hearing on January 6, 2014. The neighbors objected to the scope of the hearing and requested that the proposal to bury electrical collection lines also be addressed. The ALJ, however, overruled the objection. The county did not assert any objection to the scope of the hearing or attempt to introduce any evidence.

**{¶ 9}** On February 18, 2014, the board issued an opinion and order approving Buckeye's amendment. About a month later, the county filed an application for rehearing, arguing—for the first time—that the board erred by not holding a hearing on all the proposed changes. After the board denied the county's rehearing application, the county appealed to this court, and we granted leave for Buckeye to intervene.

### Positions of the Parties

**{¶ 10}** On appeal, the county argues that the three proposed changes that the ALJ excluded from the hearing will result in substantial changes to the facility or will materially increase the environmental impact of the facility. Therefore, the county asserts that R.C. 4906.07(B) required the board to hold a hearing on those proposals and the board's refusal to do so was unreasonable and unlawful.

**{¶ 11}** The board and Buckeye maintain that R.C. 4906.07(B) did not require a hearing on those three proposed changes and therefore the board appropriately exercised its discretion in limiting the scope of the hearing. The board and Buckeye also assert various reasons to dismiss the county's appeal on grounds other than the merits, including that the county forfeited its appellate arguments by not timely challenging the board's decision limiting the scope of the hearing.

**{¶ 12}** Accordingly, the first issue before us is whether the county properly preserved its arguments for appeal. If the county forfeited its right to challenge the scope of the hearing on appeal, we need not consider whether the board properly applied R.C. 4906.07(B). *See In re Application of Columbus S. Power Co.*, 138 Ohio St.3d 448, 2014-Ohio-462, 8 N.E.3d 863, ¶ 41 (an issue that an appellant has failed to properly preserve for appeal will not be considered).

### Law and Analysis

**{¶ 13}** We have previously held that in public-utility and power-siting cases, a party forfeits an appellate argument if it deprives the agency of an

4

opportunity to cure the alleged error when it reasonably could have cured it. For example, in *In re Application of Black Fork Wind Energy, L.L.C.*, 138 Ohio St.3d 43, 2013-Ohio-5478, 3 N.E.3d 173, a group of local residents appealed the board's approval of a wind-farm certificate, arguing that they were denied the opportunity to cross-examine certain staff witnesses at the board hearing. *Id.* at ¶ 11. The record revealed, however, that upon learning that the witnesses would not testify before the board, the appellants had failed to subpoena the witnesses or object to their absence. *Id.* at ¶ 8, 18-19. Instead, the appellants raised their objection to the witnesses' absence in their application for rehearing. *Id.* at ¶ 20. We noted that "[a] party's failure to challenge an alleged error constitutes a forfeiture of the objection because it deprives the board of an opportunity to cure any error when it reasonably could have." *Id.* at ¶ 19. And we held that the "appellants should have objected to the absence of those staff members or at least requested an opportunity to compel their attendance" and that their "decision to wait until the rehearing stage to raise this objection [was] fatal to their claim." *Id.* at ¶ 20.

{¶ 14} We reached a similar conclusion in *Parma v. Pub. Util. Comm.*, 86 Ohio St.3d 144, 148, 712 N.E.2d 724 (1999) ("By failing to raise an objection until the filing of an application for rehearing, Parma deprived the [Public Utilities Commission] of an opportunity to redress any injury or prejudice that may have occurred"), *Ohio Consumers' Counsel v. Pub. Util. Comm.*, 127 Ohio St.3d 524, 2010-Ohio-6239, 941 N.E.2d 757, ¶ 18 (an appellant's failure to challenge an alleged error "at an earlier juncture constitute[d] a forfeiture of the objection because it deprived the commission of an opportunity to cure any error when it reasonably could have"), and *In re Application of Columbus S. Power Co.*, 138 Ohio St.3d 448, 2014-Ohio-462, 8 N.E.3d 863, at ¶ 41 ("By waiting six months to challenge the order, [the appellant] deprived the commission of an opportunity to cure any error when it reasonably could have. The issue is therefore waived and will not be considered").

{¶ 15} Here, the county had numerous opportunities to challenge the board's decision limiting the scope of the hearing, yet it waited until its application for rehearing to first raise an objection. Specifically, on November 21, 2013, the ALJ determined that three of Buckeye's proposed changes did not require a hearing. The county did not request reconsideration, file an interlocutory appeal, or otherwise object to the ALJ's prehearing entry.

{¶ 16} At the commencement of the January 6, 2014 hearing, the neighbors requested that the hearing include Buckeye's proposal to bury all electrical collection lines. The ALJ specifically inquired whether the county had any comment on the neighbors' objection, and the county's counsel responded, "Nothing, Your Honor." Thus, the neighbors were the only party to raise an objection to the scope of the hearing, and they limited their objection to only one of the proposed changes. No party objected at the hearing to the exclusion of Buckeye's proposals to relocate four access roads or resize the construction staging areas.

{¶ 17} During the hearing, Buckeye proffered a witness who testified about the benefits of burying electrical lines and resizing the construction staging areas—despite the fact that the ALJ had determined that those proposed changes did not require a hearing. Yet the county did not object to the witness's testimony and declined the ALJ's invitation to cross-examine him. And the county failed to proffer any of its own evidence, call any of its own witnesses, or present any closing argument. Indeed, at no time before or during the hearing did the county register its disagreement with the ALJ's prehearing decision, ask to expand the scope of the hearing, or seek to introduce evidence regarding the proposed changes that the ALJ had ruled were not subject to hearing.

{¶ 18} On appeal, the county maintains that its rehearing application was the appropriate time to raise its objection due to the nature and availability of the board's rehearing process. Although it is true that the board's statutes require a

party to identify alleged errors with specificity in a rehearing application in order to preserve those issues for appellate review, *see* R.C. 4903.10(B) and 4906.12, the availability of that process does not mean that a party may sit idly and withhold all objections before and during a board hearing and then belatedly raise them in a rehearing application. Notwithstanding the rehearing process, parties have the obligation to alert the board of an alleged error at a time when it could reasonably have been avoided or corrected. The availability of a rehearing process did not save the appellants in *Black Fork Wind* from application of the forfeiture doctrine. *See* 138 Ohio St.3d 43, 2013-Ohio-5478, 3 N.E.3d 173, at ¶ 20 (holding that the appellants' decision "to wait until the rehearing stage to raise this objection [was] fatal to their claim").

{¶ 19} In accord, we hold that the county's failure to take any action to challenge the scope of the hearing until *after* the hearing had already occurred and *after* the board had issued its order deprived the board of an opportunity to cure any alleged error at a time when it reasonably could have done so. Therefore, the county forfeited its right to challenge the scope of the hearing on appeal, and the board acted reasonably and lawfully in limiting the scope of the hearing, and we therefore affirm the decision of the board.

Order affirmed.

O'CONNOR, C.J., and PFEIFER, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

————————————

Kevin S. Talebi, Champaign County Prosecuting Attorney, and Jane A. Napier, Assistant Prosecuting Attorney, for appellants, Champaign County and Goshen, Union, and Urbana Townships.

Michael DeWine, Attorney General, William L. Wright, Section Chief, and Werner L. Margard III and John H. Jones, Assistant Attorneys General, for appellee Ohio Power Siting Board.

Vorys, Sater, Seymour & Pease, L.L.P., Michael J. Settineri, and William A. Sieck, for intervening appellee, Buckeye Wind, L.L.C.

_____