DeGenaro, J.
*181 {¶ 1} Appellants, Gary J. Biglin, Karel A. Davis, Brett A. Heffner, Alan Price, Catherine Price, Margaret Rietschlin, and John Warrington, appeal from orders of the Power Siting Board granting a motion filed by intervening appellee, Black Fork Wind Energy, L.L.C. ("Black Fork"), requesting a two-year extension of Black Fork's certificate to construct a proposed wind farm. Appellants argue that the two-year extension amounted to an "amendment" of the certificate under R.C. 4906.06(E) and 4906.07(B) and that the board therefore erred by granting Black Fork's motion rather than complying with the statutory process for amending a certificate. Appellants also assert that the board's failure to treat the two-year extension as an amendment allowed Black Fork to evade current turbine-setback requirements that apply when an existing certificate is amended.
{¶ 2} We conclude that the board's extension of Black Fork's certificate constitutes an amendment and that the board acted unlawfully in granting Black Fork's motion rather than following the statutory procedures for amending a certificate. Because this error prejudiced appellants, we reverse the board's orders and remand this cause for further proceedings consistent with this opinion.
Facts and Procedural Background
{¶ 3} This is the second appeal involving the proposed Black Fork Wind Energy Project. As we previously explained:
*182 In March 2011, Black Fork filed an application to construct a wind farm consisting of up to 91 turbines in portions of Crawford and Richland Counties. In addition to the turbines, Black Fork's project includes access roads, electrical collection lines, a construction-staging area, a concrete-batch plant, a substation, and an operation and maintenance facility. The project area covers approximately 24,000 acres of land, and the facilities will be located on approximately 14,800 acres of leased private land with 150 participating landowners. According to Black Fork's application, voluntary agreements have been signed by the participating property owners within the project area. Black Fork claims that the facility will provide up to 200 megawatts of renewable energy "with effectively *790 zero air emissions and waste generation."
In re Application of Black Fork Wind Energy, L.L.C. , 138 Ohio St.3d 43, 2013-Ohio-5478, 3 N.E.3d 173, ¶ 2.
{¶ 4} After Black Fork filed its initial application, several local political subdivisions and individuals-including the appellants in this case, who claimed to live near the leased land or within the project boundaries-intervened in the board proceeding. In October 2011, the board conducted an evidentiary hearing, and in January 2012, it granted Black Fork a certificate to construct the proposed wind farm.
{¶ 5} The board's order adopted stipulated conditions agreed to by several of the parties and the board's staff (but not by the appellants in this case), including "condition No. 70," which stated that the certificate "shall become invalid if the Applicant has not commenced a continuous course of construction of the proposed facility within five (5) years of the date of journalization of the certificate." Because the board journalized its decision on January 23, 2012, Black Fork had until January 23, 2017, to commence construction.
{¶ 6} Five of the seven appellants involved in the present case appealed to this court, but in December 2013, we affirmed the board's order granting Black Fork's certificate. See Black Fork Wind Energy at ¶ 23-24.
{¶ 7} On September 12, 2014, Black Fork filed the motion that is the subject of this appeal with the board under the same case number (No. 10-2865-EL-BGN) in which Black Fork's certificate had been granted, seeking to extend its certificate by two years, with a new commencement-of-construction deadline of January 23, 2019. Black Fork argued that the delay caused by the prior appeal to this court combined with recent changes in the energy market had hampered its ability to commence construction of the project. Most of the appellants-who were then acting pro se-filed responses opposing Black Fork's motion to extend the certificate.
*183 {¶ 8} Also on September 12, 2014, Black Fork filed an application to amend its certificate, which created a new proceeding before the board with a new case number (No. 14-1591-EL-BGA).[1] In its application to amend, Black Fork asserted that two new turbine models had become available since it originally applied for a certificate and that the new models would increase the productivity of the project. Black Fork therefore requested that the board amend its certificate to include the two new models. Some of the appellants involved in the present case intervened in Black Fork's amendment-application proceeding and opposed Black Fork's request.
{¶ 9} As will be explained more fully below, Ohio law requires the board's staff to investigate any application to amend a siting certificate and to issue a report of its findings. Accordingly, the board's staff investigated Black Fork's amendment application in case No. 14-1591-EL-BGA and, in August 2015, filed a report recommending approval of the application. Later that month, on August 27, 2015, the board issued an order formally approving it. Notably, the board determined that the turbine-setback requirements in place at the time it initially certified Black Fork's proposed wind farm continued to apply to Black Fork's project-notwithstanding the legislature's enactment of a more stringent *791 turbine-setback law in 2014, which provides in two different statutes that "[a]ny amendment made to an existing certificate after the effective date of" of the new legislation-September 15, 2014-"shall be subject" to the new setback requirements. R.C. 4906.20(B)(2)(b)(ii) and 4906.201(B)(2). Even though Black Fork had labeled the application to change the certificate as one seeking to "amend" it and even though the board's staff had conducted an investigation under a new case number, the board reasoned that the changes proposed in Black Fork's amendment application "[did] not constitute an amendment under R.C. 4906.201(B)(2)" and that therefore the new setback requirements did not apply. No one-including the appellants in the present case-appealed the board's order in case No. 14-1591-EL-BGA approving Black Fork's 2014 amendment application.
{¶ 10} About seven months later, on March 24, 2016, the board in the case now before us granted Black Fork's motion to extend the certificate. Appellants filed a rehearing application, which the board denied in an order issued on February 2, 2017. Appellants then filed this appeal, raising four propositions of law. We granted Black Fork's motion for leave to intervene to defend the board's orders.[2]
*184 Standard of Review
{¶ 11} We will reverse, modify, or vacate an order of the Power Siting Board "only when our review of the record reveals that the order is unlawful or unreasonable." In re Application of Champaign Wind, L.L.C. , 146 Ohio St.3d 489, 2016-Ohio-1513, 58 N.E.3d 1142, ¶ 7 ; see R.C. 4906.12 (incorporating the standard of review from R.C. 4903.13 ). We will not reverse or modify a board's order as to questions of fact when the record contains sufficient probative evidence to show that the order was not manifestly against the weight of the evidence and was not so clearly unsupported by the record as to show misapprehension, mistake, or willful disregard of duty. Champaign Wind at ¶ 7. But as to questions of law, we have complete and independent power of review in appeals from the board. Id.
R.C. Chapter 4906 and related Administrative Code provisions
{¶ 12} The board has exclusive authority to issue certificates of environmental compatibility and public need for construction, operation, and maintenance of "major utility facilities" such as the proposed wind farm at issue in this case. In re Application of Buckeye Wind, L.L.C. , 131 Ohio St.3d 449, 2012-Ohio-878, 966 N.E.2d 869, ¶ 2 ; R.C. 4906.01, 4906.03, and 4906.13. R.C. Chapter 4906 and the board's administrative rules also set out a procedure for amending a certificate. See R.C. 4906.06(A) and (E) and former Ohio Adm.Code 4906-5-10(B), 2008-2009 Ohio Monthly Record 2-4257, *792 effective June 19, 2009.[3]
{¶ 13} Most importantly for purposes of this case, to commence the amendment process, a litigant must first file an application with the board that is "in such form and contain[s] such information as the board prescribes." R.C. 4906.06(E). Applications for amendments must contain the information enumerated in R.C. 4906.06(A) and must "be submitted in the same manner as if they were applications for a certificate." Former Ohio Adm.Code 4906-5-10(B), 2008-2009 Ohio Monthly Record 2-4257. After receiving an amendment application, board staff must investigate the application and submit a report containing recommended *185 findings on whether the application meets certain statutory criteria. See R.C. 4906.07(C) and former Ohio Adm.Code 4906-5-05(D), 2008-2009 Ohio Monthly Record 2-3661, effective May 7, 2009. In addition, if certain statutory conditions are met, a hearing on the amendment application may be necessary. See R.C. 4906.07(B).
{¶ 14} The parties here appear to agree on the correct process for amending a certificate. They disagree, however, on the meaning of "amendment" and, more specifically, on whether extending a certificate constitutes an "amendment" of the certificate. Neither the Revised Code in Chapter 4906 nor the board's applicable administrative rules define what constitutes an "amendment" or when an amendment is necessary. Accordingly, the primary issue before us is whether the board's two-year extension of Black Fork's certificate amounted to an "amendment" of that certificate.
The two-year certificate extension amounted to an amendment
{¶ 15} Appellants assert that extending Black Fork's certificate was an "amendment" because it modified a material condition of the original certificate-namely, the five-year commencement-of-construction deadline of condition No. 70. Therefore, in their first proposition of law, appellants assert that the board acted unreasonably and unlawfully by amending Black Fork's certificate through the motion Black Fork filed rather than by following the statutory process for amending a certificate. In their second proposition of law, appellants assert that the board lacked authority to alter, waive, or dispense with the statutory procedures.
{¶ 16} In response, the board argues that because R.C. Chapter 4906 does not define "amendment," the board-as the agency entrusted to enforce power-siting laws-has broad discretion to determine whether a particular change to a certificate should be regarded as an "amendment." In consideration of the entire statutory scheme, the board asserts in its brief that "a proposed change to the facility is required" for a change "to constitute an amendment." (Emphasis sic.) And because a "decision whether to modify a procedural timeline involves no change to the facility," the board asserts that the statutory process for amending a certificate was not invoked and did not need to be followed in this case. According to the board, the legislature did not expect the board to "re-litigate a case over a mere timing issue."
*793 The board further notes that it has consistently extended the durations of certificates by granting motions starting in 1996 and that its longstanding, unchallenged administrative practice is entitled to deference. Black Fork similarly argues that the relevant statutes and administrative rules support the board's definition of "amendment" and the board's practice of extending certificates by granting motions.
*186 {¶ 17} When construing a statute, we first look to its plain language. State v. Thomas , 148 Ohio St.3d 248, 2016-Ohio-5567, 70 N.E.3d 496, ¶ 7. If the meaning of a statute is unambiguous, we must apply it as written without further interpretation. Weiss v. Pub. Util. Comm. , 90 Ohio St.3d 15, 17, 734 N.E.2d 775 (2000). Most importantly for this case, "[i]n the absence of a definition of a word or phrase used in a statute, words are to be given their common, ordinary, and accepted meaning." State v. Black , 142 Ohio St.3d 332, 2015-Ohio-513, 30 N.E.3d 918, ¶ 39, citing Wachendorf v. Shaver , 149 Ohio St. 231, 78 N.E.2d 370 (1948), paragraph five of the syllabus; see also Rhodes v. New Philadelphia , 129 Ohio St.3d 304, 2011-Ohio-3279, 951 N.E.2d 782, ¶ 17.
{¶ 18} Black's Law Dictionary defines "amendment" as "[a] formal and usu. minor revision or addition proposed or made to a statute, constitution, pleading, order, or other instrument; specif., a change made by addition, deletion, or correction; esp., an alteration in wording." Black's Law Dictionary 98 (10th Ed.2014). Webster's Third New International Dictionary defines "amendment" as the "act of amending esp. for the better; correction of a fault or faults; reformation," "the process of amending (as a motion, bill, act, or constitution)," and "an alteration proposed or effected by such process." Webster's Third New International Dictionary 68 (2002). And "amend" is defined as "to change or alter in any way esp. in phraseology" or "to alter (as a motion, bill, or law) formally by modification, deletion, or addition." Id.
{¶ 19} Under any common, ordinary, and accepted meaning, the board's actions here amounted to an "amendment" of Black Fork's certificate. In its order approving the original certificate, the board adopted condition No. 70, which provided that "[t]he certificate shall become invalid if the Applicant has not commenced a continuous course of construction of the proposed facility within five (5) years of the date of journalization of the certificate." In the orders on appeal, the board altered this deadline by giving Black Fork two additional years to start constructing the proposed wind project and it therefore revised the certificate's original expiration date from January 23, 2017, to January 23, 2019. In other words, the board amended condition No. 70 by changing the compliance deadline.
{¶ 20} Because the board is a creature of statute, it can exercise only those powers the legislature confers on it. See Discount Cellular, Inc. v. Pub. Util. Comm. , 112 Ohio St.3d 360, 2007-Ohio-53, 859 N.E.2d 957, ¶ 51 ; R.C. 4906.02(A). And because the controlling statutes require the filing of an application to amend a certificate, the board acted unlawfully by amending the certificate based on Black Fork's motion . Black Fork should have instead filed an amendment application, and the board's staff should have investigated the application and issued a report.
*187 {¶ 21} Administrative deference is not necessary in this case. Because the statutory language is clear we need go no further than applying the common and ordinary meaning of "amendment" to resolve this appeal. Nor does our decision necessarily require the board "to re-litigate a case over a mere timing issue" as the *794 board claims in its brief. As the board's counsel acknowledged during oral argument and as the record demonstrates, the board has discretion to tailor a staff investigation to fit the circumstances of an application to amend a siting certificate. For example, the board's staff issued a 71-page report after investigating Black Fork's initial application to construct the proposed wind farm. But after investigating Black Fork's application to amend the certificate in case No. 14-1591-EL-BGA, the board's staff issued a three-page report focused only on Black Fork's specific request to add two new turbine models. Further, R.C. 4906.07(B) requires the board to hold a hearing on an application to amend a certificate only if certain conditions are met.
{¶ 22} Accordingly, we conclude that the board's two-year extension of the certificate amounted to an "amendment" and that the board therefore acted unlawfully by failing to comply with the statutory process for amending a certificate.
Appellants have established prejudice
{¶ 23} This court will not reverse an order of the board "unless the party seeking reversal shows that it has been or will be harmed or prejudiced by the order." In re Complaint of Buckeye Energy Brokers, Inc. v. Palmer Energy Co. , 139 Ohio St.3d 284, 2014-Ohio-1532, 11 N.E.3d 1126, ¶ 19. The board and Black Fork assert that even if the board erred by extending Black Fork's certificate by granting Black Fork's motion, appellants have not shown that they were prejudiced by the board's orders. For example, Black Fork argues that appellants were not prejudiced by the lack of a staff report, because the board's staff was familiar with Black Fork's project and conducted investigations and filed staff reports in 2011 (for the original certificate), 2015 (for the amendment application in case No. 14-1591-EL-BGA), and 2017 (for the amendment application in case No. 17-1148-EL-BGA). According to Black Fork, if the board's staff had had any objections to the two-year certificate extension, the board's staff would have expressed those objections during one of those investigations.
{¶ 24} Appellants were harmed in at least two ways. First, they never received the benefit of a staff investigation and report regarding Black Fork's specific request to extend the certificate for two years past the initial expiration date. We have explained that the purpose of a staff report-in that case, in the context of a public utility's rate-increase application-is " 'to facilitate meaningful contest of rate increase applications by providing interested parties with the materials necessary for an informed challenge.' "
*188 Office of Consumers' Counsel v. Pub. Util. Comm. , 67 Ohio St.2d 153, 161, 423 N.E.2d 820 (1981), quoting Duff v. Pub. Util. Comm. , 56 Ohio St.2d 367, 376, 384 N.E.2d 264 (1978). Here, appellants did not receive the materials necessary for an informed challenge. Further, we presume that a staff investigation and report is more than a mere formality. Therefore, the fact that the board's staff investigated the separate and distinct issues raised in Black Fork's two amendment applications is not an appropriate substitute for an investigation of the specific issues raised in the motion filed by Black Fork in 2014 that is the subject of this case.
{¶ 25} Second, appellants have shown a realistic possibility of a different outcome but for the board's error in extending Black Fork's certificate by granting Black Fork's motion. For example, had the board treated the motion for an extension as an application for an amendment, the current setback provisions in R.C. 4906.20 and 4906.201 may have been triggered. Alternatively, appellants assert that a consequence of the board's error in granting *795 Black Fork's motion is that the extension is invalid, which, according to appellants, caused the certificate by its original terms to have expired in January 2017. Although ultimate resolution of the merits of those issues is beyond the scope of this appeal, they are relevant to our determination of prejudice. Because there is the possibility of a different outcome but for the board's error, appellants have established that they were prejudiced by the board's orders.
Appellants' remaining propositions of law
{¶ 26} In appellants' third proposition of law, they assert that the board may not extend a certificate absent a showing of good cause and that "because the Board's staff failed to generate the required report of its investigation, there has been no showing of good cause justifying the extension." Because we determine that the board erred by not following the statutory process for amending a certificate, we need not reach this issue.
{¶ 27} In their fourth proposition of law, appellants claim that the board's orders in the present case and also those issued in the related proceedings have permitted Black Fork to evade the current turbine-setback provisions in R.C. 4906.20(B)(2) and 4906.201, and appellants seek an instruction from this court directing the board to apply the current setback provisions "to any amendment of Black Fork's certificate." Black Fork proffers statutory-construction arguments and arguments based on the Ohio Constitution to oppose application of those setback requirements to its project. The board argues that the setback issues are "irrelevant" to the narrow question before the court in this appeal, but it has nonetheless moved for leave to file a surreply brief to address one-but not all-of Black Fork's constitutional challenges to R.C. 4906.20 and 4906.201.
{¶ 28} R.C. 4906.201(B)(2) provides that the current setback provisions apply to "[a]ny amendment made to an existing certificate after the effective date" of the *189 legislation establishing the current setback distance. In the orders on appeal, the board did not treat Black Fork's requested certificate extension as an "amendment," and it therefore did not apply R.C. 4906.201 or otherwise interpret the statute. Nor did the board address Black Fork's various challenges to the application of the current setback statutes to its project.
{¶ 29} We have long held that "[c]onstitutional questions will not be decided until the necessity for a decision arises on the record before the court." State ex rel. Herbert v. Ferguson , 142 Ohio St. 496, 52 N.E.2d 980 (1944), paragraph two of the syllabus. And we recently reiterated that " 'if it is not necessary to decide more, it is necessary not to decide more.' " Capital Care Network of Toledo v. Dept. of Health , 153 Ohio St.3d 362, 2018-Ohio-440, 106 N.E.3d 1209, ¶ 31, quoting PDK Laboratories, Inc. v. United States Drug Enforcement Admin. , 362 F.3d 786, 799 (D.C.Cir.2004) (Roberts, J., concurring in part and concurring in judgment). Because this case can be resolved on the issue whether the board properly extended Black Fork's certificate by granting its motion and because the board did not fully address the setback issues in the orders on appeal, we decline to decide in this appeal the applicability and constitutionality of the setback provisions in R.C. 4906.20(B)(2) and 4906.201. Resolution of those questions must await a case in which the issues are squarely before us.
{¶ 30} In sum, for the reasons explained above, we hold that the board acted unlawfully by extending Black Fork's certificate *796 by granting Black Fork's motion rather than requiring it to file an application to amend the certificate. Appellants have shown that there is a realistic possibility of a different outcome but for the board's error in extending Black Fork's certificate by granting the motion, and they have therefore established prejudice. Accordingly, we reverse the board's orders and remand this cause for further proceedings consistent with this opinion. We also deny the board's amended motion for leave to file a surreply brief.
Orders reversed and cause remanded.
O'Connor, C.J., and French, J., concur.
Kennedy, J., concurs, with an opinion joined by DeWine, J.
Fischer, J., dissents, with an opinion joined by O'Donnell, J.

On August 25, 2017, we granted Black Fork's motion to supplement the appellate record in this case with the board's record for case No. 14-1591-EL-BGA.

Although not part of the record on appeal in the present case, the parties recognize and refer to the fact that after appellants commenced this appeal, Black Fork filed another application to amend its certificate, which created a third related proceeding before the board, under a new case number (No. 17-1148-EL-BGA). In the third proceeding, Black Fork sought to use a new version of one of its previously approved turbine models, and it also asked the board to extend the certificate by another year-from January 23, 2019, to January 23, 2020. The board approved Black Fork's application in case No. 17-1148-EL-BGA on December 7, 2017, and issued an order denying an application for rehearing on June 21, 2018. On August 9, 2018, the appellants in that case-the same seven individuals who are appealing the orders in the present case-appealed those board orders to this court. That appeal is currently pending as case No. 2018-1134.

Although the board amended and renumbered former Ohio Adm.Code 4906-5-10 (see Ohio Adm.Code 4906-3-11 and 4906-6-12 ) and 4906-5-05 (see Ohio Adm.Code 4906-3-06 ), 2015-2016 Ohio Monthly Record 2-1890 and 2-1896, effective December 11, 2015, the former rules remain applicable to this case because they were in effect at the time Black Fork filed its September 12, 2014 motion to extend the certificate for its proposed wind farm.