[Cite as *In re S.H.*, 2026-Ohio-465.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

IN RE  S.H.                                            :

A Minor Child                                         :

[Appeal by Father, T.H.]                      :

No. 115278

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:**  AFFIRMED
**RELEASED AND JOURNALIZED:**  February 12, 2026

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. CU16117787

---

***Appearances:***

T.H., *pro se.*

WILLIAM A. KLATT, J.:

{¶ 1}  Defendant-appellant T.H. ("Father"), father of minor child S.H. ("the child") (dob 11/13/2015), appeals from the June 27, 2025 judgment entry that granted the motion to intervene and application for companionship time filed by T.J., the paternal grandmother of S.H.  For the following reasons, we affirm the juvenile court's order.

**Factual and Procedural History**

{¶ 2} As a preliminary matter, we note that T.J. failed to file an appellee brief. Therefore, pursuant to App.R. 18(C), this "court may accept the appellant's statement of the facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to sustain such action."

{¶ 3} Prior to the filing of T.J.'s motion in the underlying action, the juvenile court designated Father as the sole legal custodian of S.H. *See* Oct. 17, 2022 judgment entry. Approximately two and one-half years later, on January 3, 2025, T.J. filed a motion to intervene and application for companionship time with S.H., stating T.J. had been actively involved in the child's life until Father, without reason, refused to allow her to see S.H. On June 2, 2025, the juvenile court conducted a trial on the motion at which it heard testimony from T.J., Father, and S.H.'s mother, and the court conducted an in camera interview of the child on June 9, 2025.

{¶ 4} On June 9, 2025, the magistrate considered the docket, the pleadings, the trial testimony of T.J., Father, and S.H.'s mother, and the in camera interview of S.H. The magistrate issued a corresponding decision granting T.J.'s motion and application that made the following findings of fact and conclusions of law:

> The court finds that the parental grandmother, [T.J.], regularly spent time with the child until September 2024. The father has custody of the child but would allow the child to spend a significant amount of time at [T.J.'s] home. Both [T.J.] and Father agree that the child would stay at [T.J.'s] home for extended periods of time. [T.J.] would provide and care for the child's basic needs during this time. [T.J.] would ensure that the child was attending school, provide meals, as well as engage in extracurricular activities with the child.

The Court finds that father encouraged this relationship between [T.J.] and the child and was okay with the child going with [T.J.] at will until September 2024. Father has issue with [T.J.] not following the dietary restrictions that he had put in place for the child. Father reports that he had asked [T.J.] repeatedly to not pack sugary foods (sweets) in the child's lunch nor allow the child to have sweets due to the child's diet as well as health reasons. The father further reported that the child appeared unhealthy and had several cavities. The father states that subsequent to him talking to [T.J.] about the dietary restrictions, [T.J.] packed a honey bun in the child's lunch. Father also claims that [T.J.] gives the child sweets when she is over [at] her home. [T.J.] denies this claim.

The Court further finds that father feels undermined and reports that [T.J.] ignores his instructions regarding the child's diet. The Court finds it difficult to determine whether the cavities were a result of the child receiving sweets at [T.J.'s] or whether [T.J.] intentionally undermines the father. What the Court does find evident is that the child had a significant relationship and bond with [T.J.] until father stopped the visits in September 2024. The Court does agree that [T.J.] and any other party caring for the child should adhere to the dietary restrictions that father has implemented. There appears to be historical and current issues unresolved between the father and [T.J.] However, the child should not be punished as a result. What is clear is that the child and [T.J.] have developed a strong relationship over the years due to the time spent with one another. The child and [T.J.] both value this relationship.

The Motion to Intervene and the Application for Companionship Time are granted. . . .

Jume 12, 2025 magistrate's decision. The magistrate ordered monthly visitation between S.H. and T.J., and the magistrate ordered T.J. to follow Father's recommended dietary restrictions and child care.

{¶ 5} On June 16, 2025, Father filed objections to the magistrate's decision arguing that T.J. does not respect Father "as a man or a father on how [he] want[s] to raise" his child. Father questioned how he or the court would know whether T.J.

acted in accordance with the court's mandate to follow the dietary restrictions. Father also argued that there was no basis to grant T.J. companionship.

{¶ 6} The court issued a judgment entry on June 24, 2025, that overruled Father's objections, and on June 27, 2025, the juvenile court adopted the magistrate's decision.

{¶ 7} On June 30, 2025, Father filed a notice of appeal, and he now presents two assignments of error:

> Assignment of Error I: The trial court erred in granting grandparent visitation over the objection of a fit and custodial parent, despite clear evidence that such visitation undermines parental authority and has caused harm to the child's health.

> Assignment of Error II: The trial court erred by failing to give proper "special weight" to the fit parent's decision regarding visitation, as required by *Troxel v. Granville*, 530 U.S. 57 (2000), and Ohio precedent.

{¶ 8} On the same date he filed his notice of appeal, Father filed a motion requesting a copy of the transcript from a June 24, 2025 hearing and asking that the court waive the cost of the transcript. The record does not reflect that the court conducted a hearing on June 24, 2025. The only event reflected on the docket on June 24, 2025, is the juvenile court's issuance of the judgment entry overruling Father's objections to the magistrate's decision. We assume Father meant to reference the June 2, 2025 trial — at which the court heard testimony from T.J., Father, and S.H.'s mother — and to request the corresponding transcript.

{¶ 9} In response to Father's motion, the juvenile court issued a July 15, 2025 judgment entry granting Father's motion for a transcript of the "June 24, 2025" hearing and waiving the associated fee. The judgment entry also stated:

> The party who files a motion seeking a transcript of the proceedings is responsible for contacting the Clerk's Office upon receipt of the journal entry approving the request. Supplemental instructions will be available at the Clerk's Office. . . . The transcript is to be ready for delivery as soon as possible.

July 15, 2025 judgment entry. The docket reflects that following the July 15, 2025 judgment entry, Father did not request or obtain a copy of any transcript from the lower court's proceedings.[1]

**Legal Analysis**

{¶ 10} Initially, we note that Father acted pro se in the juvenile court and represents himself pro se on appeal. This court has previously recognized that

> a pro se litigant may face certain difficulties when choosing to represent oneself. Although a pro se litigant may be afforded reasonable latitude, there are limits to a court's leniency. *Henderson v. Henderson*, 11th Dist. Geauga No. 2012-G-3118, 2013-Ohio-2820, ¶ 22. Pro se litigants are presumed to have knowledge of the law and legal procedures, and are held to the same standard as litigants who are represented by counsel. *In re Application of Black Fork Wind Energy, L.L.C.*, 138 Ohio St.3d 43, 2013-Ohio-5478, 3 N.E.3d 173, ¶ 22.

*Saeed v. Greater Cleveland Regional Transit Auth.*, 2017-Ohio-935, ¶ 7 (8th Dist.).

Thus, we presume Father had knowledge of the law, legal procedures, and appellate process.

---

[1] Currently pending before the juvenile court are Father's July 17, 2025 motion to show cause and T.J.'s July 28, 2025 motion for temporary custody and motion to modify the court's prior custody order that are unrelated to this instant appeal.

## A. Loc.App.R. 3(B)(1)

{¶ 11} Parties must attach to their notice of appeal "a copy of the judgment or order appealed from (journal entry) signed by the trial judge and time-stamped with the date of receipt by the clerk. The subject attachments are not jurisdictional but their omission may be the basis for a dismissal." Loc.App.R. 3(B)(1); *see N. Chem. Blending Corp. v. Strib Industries*, 2018-Ohio-3364, ¶ 23-24 (8th Dist.). The notice of appeal notifies the parties that an appeal has been filed, and the attachment of the relevant judgment entry informs the parties of the scope of the appeal. *N. Chem. Blending Corp.* at ¶ 24. "[A]ppellate courts enjoy discretion to dismiss appeals for failure to comply with App.R. 3." *Midland Funding L.L.C. v. Hottenroth*, 2014-Ohio-5680, ¶ 3 (8th Dist.), citing *Transamerica Ins. Co. v. Nolan*, 72 Ohio St.3d 320, 322-323 (1995).

{¶ 12} Father did not attach a copy of a juvenile court judgment entry to his notice of appeal. On July 1, 2025, this court, sua sponte, ordered Father to file the judgment entry associated with his appeal, and Father failed to do so. At the time Father filed the appeal, the only issue before the juvenile court was T.J.'s motion to intervene and application for companionship time with S.H.

{¶ 13} In this case, where the case docket indicates the parties were notified of the appeal and Father briefed his assigned errors, this court chooses to exercise

its discretion and not dismiss Father's appeal because of his lack of compliance with Loc.App.R. 3(B)(1).[2]

## B. Presume Regularity

{¶ 14} In his first assignment of error, Father argues that the juvenile court's grant of visitation rights to T.J. was not supported by the trial testimony heard on June 2, 2025.

{¶ 15} A party seeking an appeal bears the burden of demonstrating the lower court's error by referring to the lower court's record of the proceedings; the appellant must also provide the reviewing court with an adequate transcript. *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199 (1980). Absent a complete and adequate record, the reviewing court must presume the regularity of the lower court's proceedings as well as the presence of sufficient evidence to support the lower court's decision. *Bohrer v. Bakers Square Restaurant*, 2007-Ohio-2223, ¶ 5 (8th Dist.), citing *Corsaro, Giganti & Assoc. v. Stanley*, 2000 Ohio App. LEXIS 4299, 4 (8th Dist. Sept. 21, 2000), citing *Ostrander v. Parker-Fallis Insulation*, 29 Ohio St.2d 72, 74 (1972). "Allegations raised in an appellate brief are not sufficient to overcome the presumption of regularity in a trial court's proceedings and

---

[2] A review of the docket indicates that T.J. may not have been served when Father filed his notice of appeal because T.J. was not initially added as a party to the appeal or served with any filings or orders issued on appeal. Thus, on October 20, 2025, this court, sua sponte, directed the clerk of the court of appeals to add T.J. as the appellee and to mail T.J. copies of the following: the notice of appeal, praecipe, and docketing statement; this court's Aug. 11, 2025 order; and appellant's Sept. 2, 2025 brief. The docket reflects that on October 28, 2025, the clerk of courts mailed the requested documents by regular mail, and at the time of this opinion, no such mailings have been returned to the clerk.

judgment entered by the court." *Tisco Trading USA, Inc. v. Cleveland Metal Exchange, Ltd.*, 2012-Ohio-1646, ¶ 6 (8th Dist.), citing *Bohrer* at ¶ 5, citing *Corsaro*.

{¶ 16} No transcript of the June 2, 2025 trial proceedings has been provided for our review. Accordingly, we must presume the regularity of the juvenile court's proceedings and, specifically, the court's decision to grant T.J.'s motion to intervene and application for companionship time. For the foregoing reasons, Father's first assignment of error is overruled.

## C. Special Weight to the Parents' Wishes

{¶ 17} In his second assignment of error, Father argues that the juvenile court erred when it failed to give special weight to Father's wishes regarding S.H. as required by *Troxel v. Granville*, 530 U.S. 57 (2000), and Ohio precedent.

{¶ 18} The Ohio Supreme Court adopted the plurality view in *Troxel* and stated, "Ohio courts are obligated to afford some special weight to the wishes of parents of minor children when considering petitions for nonparental visitation made pursuant to R.C. 3109.11 or 3109.12."[3] *Harrold v. Collier*, 2005-Ohio-5334, ¶ 12. Courts are required to accord some special weight to the parent's wishes but that factor need not be the court's primary or sole determinant of the child's best interest. *Harrold* at ¶ 44.

{¶ 19} The juvenile court's June 27, 2025 judgment entry specifically states that the court considered "[t]he wishes and concerns of the [c]hild's parents, as

---

[3] T.J. filed her application for companionship time pursuant to R.C. 3109.12.

expressed by them to the Court." Thus, in these limited circumstances where a transcript was not provided, this court sees nothing in the judgment entry that indicates the juvenile court committed an error of law by failing to give special weight to Father's wishes and concerns, and we overrule the second assignment of error.

{¶ 20} Judgment affirmed.

It is ordered that appellant shall pay the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
WILLIAM A. KLATT, JUDGE*

KATHLEEN ANN KEOUGH, J., CONCURS;
SEAN C. GALLAGHER, P.J., CONCURS (WITH SEPARATE CONCURRING OPINION)


(*Sitting by assignment: William A. Klatt, J., retired, of the Tenth District Court of Appeals.)


SEAN C. GALLAGHER, P.J., CONCURRING:

{¶ 21} I concur fully with the judgment and analysis of the majority but write separately to address concerns regarding the child's diet, as raised by the Father.

{¶ 22} A child's diet is arguably one of the most important aspects of early life. As a child grows, poor nutrition during adolescence has been linked to both immediate and long-term health consequences, including micronutrient deficiencies, obesity, and cardiometabolic conditions. The nutritional challenges facing adolescents require urgent attention through comprehensive, multisectoral strategies. Effective interventions during this critical developmental window can foster long-term health outcomes and help break intergenerational cycles of malnutrition. National Library of Medicine, Adolescent Nutrition and Health: a Critical Period for Nutritional Intervention to Prevent Long Term Health Consequences, available at https://pmc.ncbi.nlm.nih.gov/articles/PMC12549772/ (accessed Feb. 4, 2026).

{¶ 23} The record before us on this issue is sparse. For the court to review future concerns over diet during visits, there may need to be more information developed from the child's doctor or nutritionist, or perhaps from school officials or school nutritional program personnel, who can provide an assessment or report on the impact the child's diet has on the child's development.

{¶ 24} I also recognize that in this case, our review of the juvenile court's decision has been limited because no transcript of the trial proceedings was provided. It is worth repeating that the wishes of parents of minor children are to be afforded special weight when considering petitions for nonparental visitation. *See Harrold v. Collier*, 2005-Ohio-5334, ¶ 12. However, a trial court must weigh other relevant factors in determining the child's best interest, and "it must be

remembered that the single most important individual in a case addressing visitation rights is the child." *In re Whitaker*, 36 Ohio St.3d 213, 217 (1988). It is not the role of the appellate court to independently weigh the evidence; rather, our review is to determine whether an abuse of discretion occurred. *Id.* at 219.

{¶ 25} Here, in the absence of a transcript, we must presume regularity in the record, and we are unable to find that the juvenile court failed to give special weight to Father's wishes and concerns. Upon the limited record in this particular case, we have not found an abuse of discretion by the juvenile court.

{¶ 26} Nonetheless, Father's concern for the health and welfare of his child is not taken lightly. Although the paternal grandmother has been afforded visitation as ordered by the juvenile court, Father continues to have a fundamental right to make decisions concerning the care and control of his child. *See Troxel v. Granville*, 530 U.S. 57, 66 (2000). The juvenile court has ordered T.J. to adhere to the dietary restrictions implemented by Father. Should paternal grandmother fail to abide by the juvenile court's order, Father has the ability to pursue further action.